**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | : | Master File No. 12-md-02311 |
| | : | Judge Marianne O. Battani |
| | : | |
| | : | |
| In re: Windshield Wiper Systems | : | Case No. 2:13-cv-00903 |
| In re: Radiators | : | Case No. 2:13-cv-01003 |
| In re: Starters | : | Case No. 2:13-cv-01103 |
| In re: Automotive Lamps | : | Case No. 2:13-cv-01203 |
| In re: Electric Powered Steering Assemblies | : | Case No. 2:13-cv-01903 |
| In re: Fan Motors | : | Case No. 2:13-cv-02103 |
| In re: Fuel Injection Systems | : | Case No. 2:13-cv-02203 |
| In re: Power Window Motors | : | Case No. 2:13-cv-02303 |
| In re: Windshield Washer Systems | : | Case No. 2:13-cv-02803 |
| | : | |
| THIS RELATES TO: | : | |
| | : | |
| END-PAYOR ACTIONS | : | |
| | : | |

**MOTION FOR PRELIMINARY APPROVAL OF**
**PROPOSED SETTLEMENT WITH THE**
**MITSUBA DEFENDANTS AND**
**PROVISIONAL CERTIFICATION OF SETTLEMENT CLASSES**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that as soon as this motion may be heard before Hon. Marianne O. Battani, End-Payor Plaintiffs ("EPPs") will and do hereby respectfully move the Court for an order preliminarily approving a proposed settlement between EPPs and Defendants MITSUBA Corporation and American Mitsuba Corporation (together, "MITSUBA") in the amount of US $72,200,000.00 and provisional certification of the proposed Settlement Classes in the above-entitled actions.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, all filings in this litigation, and such other argument as may be presented to the Court.

Date:  October 2, 2017                                     Respectfully submitted,

                                     /s/ Steven N. Williams
                                     Steven N. Williams
                                     Elizabeth Tran
                                     Joyce Chang
                                     **COTCHETT, PITRE & McCARTHY, LLP**
                                     San Francisco Airport Office Center
                                     840 Malcolm Road, Suite 200
                                     Burlingame, CA 94010
                                     Telephone: (650) 697-6000
                                     Facsimile: (650) 697-0577
                                     swilliams@cpmlegal.com
                                     etran@cpmlegal.com
                                     jchang@cpmlegal.com

                                     /s/ Hollis Salzman
                                     Hollis Salzman
                                     Bernard Persky
                                     William V. Reiss
                                     **ROBINS KAPLAN LLP**
                                     399 Park Avenue, Suite 3600
                                     New York, NY 10022
                                     Telephone: (212) 980-7400
                                     Facsimile: (212) 980-7499
                                     HSalzman@RobinsKaplan.com
                                     BPersky@RobinsKaplan.com
                                     WReiss@RobinsKaplan.com

                                     /s/ Marc M. Seltzer
                                     Marc M. Seltzer
                                     Steven G. Sklaver
                                     **SUSMAN GODFREY L.L.P.**
                                     1901 Avenue of the Stars, Suite 950
                                     Los Angeles, CA 90067-6029
                                     Telephone: (310) 789-3100
                                     Facsimile: (310) 789-3150
                                     mseltzer@susmangodfrey.com
                                     ssklaver@susmangodfrey.com

Terrell W. Oxford
Chanler A. Langham
Omar Ochoa
**SUSMAN GODFREY L.L.P.**
1000 Louisiana St., Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
toxford@susmangodfrey.com
clangham@susmangodfrey.com
oochoa@susmangodfrey.com

*Interim Co-Lead Class Counsel for the*
*Proposed End-Payor Plaintiff Classes*


E. Powell Miller (P39487)
Devon P. Allard (P71712)
**THE MILLER LAW FIRM, P.C.**
The Miller Law Firm, P.C.
950 W. University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com
dpa@millerlawpc.com

*Interim Liaison Class Counsel for the Proposed*
*End-Payor Plaintiff Classes*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311<br>Judge Marianne O. Battani<br>Magistrate Judge Mona K. Majzoub |
| In re: Windshield Wiper Systems<br>In re: Radiators<br>In re: Starters<br>In re: Automotive Lamps<br>In re: Electric Powered Steering Assemblies<br>In re: Fan Motors<br>In re: Fuel Injection Systems<br>In re: Power Window Motors<br>In re: Windshield Washer Systems | Case No. 2:13-cv-00903<br>Case No. 2:13-cv-01003<br>Case No. 2:13-cv-01103<br>Case No. 2:13-cv-01203<br>Case No. 2:13-cv-01903<br>Case No. 2:13-cv-02103<br>Case No. 2:13-cv-02203<br>Case No. 2:13-cv-02303<br>Case No. 2:13-cv-02803 |
| THIS RELATES TO:<br>END-PAYOR ACTIONS | |

**MEMORANDUM OF LAW IN SUPPORT OF END-PAYOR**
**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF**
**PROPOSED SETTLEMENT WITH THE MITSUBA**
**DEFENDANTS AND PROVISIONAL CERTIFICATION OF SETTLEMENT**
**CLASSES**

## STATEMENT OF ISSUES PRESENTED

1. Whether End-Payor Plaintiffs' ("**EPPs**") proposed settlement with MITSUBA Corporation and American Mitsuba Corporation (together, "**MITSUBA**"), embodied in the Settlement Agreement entered into as of August 9, 2017 ("**Settlement Agreement**") and attached hereto as Exhibit 1, is fair, reasonable, and adequate, and should be preliminarily approved?

   Answer: Yes.


2. Whether the Court should provisionally certify the Settlement Classes under Federal Rule of Civil Procedure ("Rule") 23(a) and (b)(3)?

   Answer: Yes.


3. Whether the Court should stay the proceedings by the EPPs against MITSUBA in accordance with the terms of the Settlement Agreement?

   Answer: Yes.


4. Whether the Court should appoint Interim Co-Lead Class Counsel for the EPPs as Settlement Class Counsel for this settlement?[1]

   Answer: Yes.

---

[1] Unless otherwise defined, capitalized terms shall have the meaning ascribed to them in the Settlement Agreement.

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

Fed. R. Civ. P. 23

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013)

*Cason-Merenda v. VHS of Mich., Inc.*, 296 F.R.D. 528 (E.D. Mich. 2013), *vacated*, No. 13-0113, 2014 U.S. App. LEXIS 4447 (6th Cir. Jan. 6, 2014), *reinstated in full*, No. 06-15601, 2014 U.S. Dist. LEXIS 29447 (E.D. Mich. Mar. 7, 2014)

*Griffin v. Flagstar Bancorp, Inc.*, 2013 U.S. Dist. LEXIS 173702 (E.D. Mich. Dec. 12, 2013)
*In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996)

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003)

*In re Corrugated Container Antitrust Litigation*, MDL 310, 1981 U.S. Dist. LEXIS 9687 (S.D. Tex. June 4, 1981)

*In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393 (S.D. Ohio 2007)

*In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631 (E.D. Pa. 2003)

*In re Packaged Ice Antitrust Litig.*, 2011 U.S. Dist. LEXIS 17255 (E.D. Mich. Feb. 22, 2011)

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008)

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013)

*IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583 (E.D. Mich. 2006)

*Sheick v. Auto Component Carrier LCC*, 2010 U.S. Dist. LEXIS 110411 (E.D. Mich. Oct. 18, 2010)

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................ 1

THE BASIC TERMS AND BACKGROUND OF THE SETTLEMENT AGREEMENT .......... 5

ARGUMENT ...................................................................................... 17

I.     Preliminary Approval Should be Granted Because the Proposed Settlement Falls Well Within the Range of Possible Approval. ......................... 17

      A.     The Settlement Agreement Achieves an Excellent Result for the Proposed Settlement Classes, Particularly Given the Expense, Duration, and Uncertainty of Continued Litigation. ................................ 20

      B.     The Settlement Agreement is the Result of Thorough Arm's-Length Negotiations Conducted By Highly Experienced Counsel. .......... 23

II.     The Proposed Settlement Classes Should Be Provisionally Certified Pursuant to Rule 23. ............................................................. 24

      A.     The Proposed Settlement Classes Meet the Requirements of Rule 23(a). ............................................................................... 26

           i.     The Proposed Settlement Classes Are So Numerous That It Is Impracticable to Bring All Class Members Before the Court. ................................................................. 26

           ii.     End-Payor Plaintiff Class Representatives and the Proposed Settlement Classes Share Common Legal and Factual Questions. .............................................................. 27

           iii.     End-Payor Plaintiff Class Representatives' Claims Are Typical of the Claims of the Members of the Proposed Settlement Classes. ................................................ 28

           iv.     Proposed Settlement Class Counsel and End-Payor Plaintiff Class Representatives Will Fairly and Adequately Protect the Interests of the Proposed Settlement Classes. ......................... 29

      B.     The Proposed Settlement Classes Meet the Requirements of Rule 23(b)(3). ............................................................................. 31

           i.     Common Questions of Law and Fact Predominate. .................... 31

ii.     A Class Action is the Superior Method to Adjudicate These
Claims. ............................................................................................ 33

III.    Notice to the Class Members. ................................................................. 34

CONCLUSION ...................................................................................................... 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agretti v. ANR Freight Sys., Inc.*,
   982 F.2d 242 (7th Cir. 1992) ......................................................................17

*In re Aluminum Phosphide Antitrust Litig.*,
   160 F.R.D. 609 (D. Kan. 1995) ...................................................................27

*In re Am. Med. Sys., Inc.*,
   75 F.3d 1069 (6th Cir. 1996) ................................................................27, 29

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ........................................................................31, 32, 34

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
   133 S. Ct. 1184 (2013) .........................................................................26, 32

*In re Ampicillin Antitrust Litig.*,
   82 F.R.D. 652 (D.D.C. 1979) ......................................................................23

*In re Automotive Parts Antitrust Litigation*,
   Master File No. 2:12-md-2311 ...................................................1, 10, 11, 16

*Blades v. Monsanto Co.*,
   400 F.3d 562 (8th Cir. 2005) ......................................................................32

*In re Blood Reagents Antitrust Litig.*,
   283 F.R.D. 222 (E.D. Pa. 2012), *vacated* 783 F.3d 183 (3d Cir. 2015), *class
   certification granted* No. 09-2081, 2015 U.S. Dist. LEXIS 141909 (E.D. Pa.
   Oct. 19, 2015) .............................................................................................32

*Bobbitt v. Acad. of Reporting*,
   No. 07-10742, 2009 U.S. Dist. LEXIS 62365 (E.D. Mich. Jul. 21, 2009) .............................18

*Bowers v. Windstream Ky. East, LLC*,
   Case No. 3:09-cv-440-H, 2013 U.S. Dist. LEXIS 157242 (W.D. Ky. Nov. 1,
   2013) ...........................................................................................................24

*In re Cardizem CD Antitrust Litig.*,
   200 F.R.D. 297 (E.D. Mich. 2001) .............................................................34

*In re Cardizem CD Antitrust Litig.*,
   218 F.R.D. 508 (E.D. Mich. 2003) .........................................20, 22, 23, 25

*Cason-Merenda v. VHS of Mich., Inc.*,
  296 F.R.D. 528 (E.D. Mich. 2013)*, vacated,* No. 13-0113, 2014 U.S. App.
  LEXIS 4447 (6th Cir. Jan. 6, 2014), *reinstated in full,* No. 06-15601, 2014
  U.S. Dist. LEXIS 29447 (E.D. Mich. Mar. 7, 2014) ...........................................25, 27, 29, 32

*In re Chambers Dev. Sec. Litig.*,
  912 F. Supp. 822 (W.D. Pa. 1995)...................................................................................21

*Clark Equip. Co. v Int'l Union of Allied Industrial Workers of Am.*,
  803 F.2d 878 (6th Cir. 1986) ...........................................................................................18

*Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007).................................................................................................32

*In re Corrugated Container Antitrust Litig.*,
  643 F.2d 195 (5th Cir. 1981) ...........................................................................................30

*In re Corrugated Container Antitrust Litigation*,
  MDL 310, 1981 U.S. Dist. LEXIS 9687 (S.D. Tex. June 4, 1981) ..................................22, 23

*Date v. Sony Elecs., Inc.*,
  Case No. 07-15474, 2013 U.S. Dist. LEXIS 108095 (E.D. Mich. July 31,
  2013) ................................................................................................................................27

*In re Delphi Corp. Sec. Derivatives & ERISA Litig.*,
  248 F.R.D. 483 (E.D. Mich. 2008) ..................................................................................24

*Dillworth v. Case Farms Processing, Inc.*,
  No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446 (N.D. Ohio Mar. 8, 2010) ........................34

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
  No. 02-md-1486, 2006 U.S. Dist. LEXIS 39841 (N.D. Cal. June 5, 2006) ..........................28

*In re Farmers Ins. Exchange, Claims Representatives' Overtime Pay Litig.*,
  481 F.3d 1119 (9th Cir. 2007) .........................................................................................21

*Fidel v. Farley*,
  534 F.3d 508 (6th Cir. 2008) ...........................................................................................35

*In re Foundry Resins Antitrust Litig.*,
  242 F.R.D. 393 (S.D. Ohio 2007) ................................................................................ *passim*

*Golden v. City of Columbus*,
  404 F.3d 950 (6th Cir. 2005) ...........................................................................................26

*Griffin v. Flagstar Bancorp, Inc.*,
  Case No. 2:10-cv-10610, 2013 U.S. Dist. LEXIS 173702 (E.D. Mich. Dec. 12,
  2013) ................................................................................................................17, 24, 27, 29

*Hyland v. Homeservices of Am., Inc.*,
   Case No. 3:05-cv-612-R, 2008 U.S. Dist. LEXIS 90892 (W.D. Ky. Nov. 6,
   2008) .................................................................................................................26

*Int'l Union, UAW v. Ford Motor Co.*,
   Case Nos. 05-74730, 06-10331, 2006 U.S. Dist. LEXIS 70471 (E.D. Mich.
   July 13, 2006).............................................................................................18, 28

*IUE-CWA v. Gen. Motors Corp.*,
   238 F.R.D. 583 (E.D. Mich. 2006) ...................................................................17

*Leonhardt v. ArvinMeritor, Inc.*,
   581 F. Supp. 2d 818 (E.D. Mich. 2008)............................................................24

*Marcus v. Dep't of Revenue*,
   206 F.R.D. 509 (D. Kan. 2002).........................................................................30

*Miller v. Univ. of Cincinnati*,
   241 F.R.D. 285 (S.D. Ohio 2006) .....................................................................26

*In re Packaged Ice Antitrust Litig.*,
   Case No. 08-md-01952, 2011 U.S. Dist. LEXIS 150427 (E.D. Mich. Dec. 13,
   2011) .................................................................................................................20

*In re Packaged Ice Antitrust Litig.*,
   Case No. 08-MD-01952, 2011 U.S. Dist. LEXIS 17255 (E.D. Mich. Feb. 22,
   2011) ........................................................................................................ *passim*

*In re Packaged Ice Antitrust Litig.*,
   No. 08-md-01952, 2010 U.S. Dist. LEXIS 140235 (E.D. Mich. Sept. 2, 2010) ....................25

*In re Packaged Ice Antitrust Litig.*,
   No. 08-md-01952, 2010 U.S. Dist. LEXIS 77645 (E.D. Mich. Aug. 2, 2010) ................19, 22

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
   584 F. Supp. 2d 697 (M.D. Pa. 2008) ...............................................................22

*Rankin v. Rots*,
   No. 02-cv-71045, 2006 U.S. Dist. LEXIS 45706 (E.D. Mich. June 28, 2006) ......................18

*Reed v. Advocate Health Care*,
   268 F.R.D. 573 (N.D. Ill. 2009).........................................................................32

*In re Rent-Way Sec. Litig.*,
   305 F. Supp. 2d 491 (W.D. Pa. 2003)................................................................21

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ........................................................................21

*In re Scrap Metal Antitrust Litig.*,
 527 F.3d 517 (6th Cir. 2008) ................................................................31, 32, 33

*Sheick v. Auto Component Carrier LCC*,
 Case No. 2:09-cv-14429, 2010 U.S. Dist. LEXIS 110411 (E.D. Mich. Oct. 18,
 2010) ...................................................................................................................23

*In re Southeastern Milk Antitrust Litig.*,
 Case No. 2:09-md-1000, 2010 U.S. Dist. LEXIS 94223 (E.D. Tenn. Sept. 7,
 2010) ...................................................................................................................26

*Stout v. J.D. Byrider*,
 228 F.3d 709 (6th Cir. 2000) .............................................................................29

*In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*,
 Case No. 1:01-cv-9000, 2001 U.S. Dist. LEXIS 26714 (E.D. Ohio Oct. 19,
 2001) ...................................................................................................................19

*Thacker v. Chesapeake Appalachia, L.L.C.*,
 259 F.R.D. 262 (E.D. Ky. 2009) ..................................................................23, 35

*In re Universal Serv. Fund Tel. Billing Practices Litig.*,
 219 F.R.D. 661 (D. Kan. 2004) ...........................................................................34

*In re Uranium Antitrust Litig.*,
 617 F.2d 1248 (7th Cir. 1980) .............................................................................23

*In re Urethane Antitrust Litig.*,
 251 F.R.D. 629 (D. Kan. 2008) ...........................................................................33

*In re Vitamins Antitrust Litig.*,
 209 F.R.D. 251 (D.D.C. 2002) ............................................................................32

*Wal-Mart Stores, Inc. v. Dukes*,
 131 S. Ct. 2541 (2011) ........................................................................................25

*In re Warfarin Sodium Antitrust Litig.*,
 391 F.3d 516 (3d Cir. 2004) ................................................................................21

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
 722 F.3d 838 (6th Cir. 2013) ..............................................................26, 27, 31, 33

**Rules**

Federal Rules of Civil Procedure
 Rule 23 ...............................................................................................24, 25, 26
 Rule 23(a)............................................................................................. *passim*
 Rule 23(a)(1) ...........................................................................................26, 27

Rule 23(a)(2)..................................................................................................27, 28
Rule 23(a)(3)..................................................................................................28, 29
Rule 23(a)(4)........................................................................................................29
Rule 23(b)............................................................................................................25
Rule 23(b)(3)................................................................................31, 32, 33, 34
Rule 23(b)(3)(D)..................................................................................................34
Rule 23(c)(2)(B)..................................................................................................34
Rule 23(e)............................................................................................................35
Rule 23(e)(1)........................................................................................................35
Rule 23(g)............................................................................................................30
Rule 45................................................................................................................16

## Other Authorities

6A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND
    PROCEDURE § 1522 (2d ed. 1990)........................................................................18

4 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS (4th ed.
    2005)
    § 3:10..............................................................................................................28
    § 11.41......................................................................................................18, 23
    § 11.25..............................................................................................................19

MANUAL FOR COMPLEX LITIGATION (SECOND) (1986)
    § 30.46..............................................................................................................17

MANUAL FOR COMPLEX LITIGATION (FOURTH) (2004)
    § 13.12..............................................................................................................18
    § 21.32..............................................................................................................24
    § 21.63..............................................................................................................18
    § 21.662............................................................................................................24
    § 30.41..............................................................................................................18

The End-Payor Plaintiffs ("**EPPs**"), on behalf of themselves and all others similarly situated, by and through the undersigned Interim Co-Lead Class Counsel, respectfully submit this memorandum in support of their motion seeking preliminary approval of a settlement with MITSUBA Corporation and American Mitsuba Corporation (together, "**MITSUBA**"), and provisional certification of the proposed Settlement Classes in the above-entitled actions ("Actions").

## PRELIMINARY STATEMENT

Windshield Wiper Systems, Radiators, Starters, Automotive Lamps, Electric Powered Steering Assemblies, Fan Motors, Fuel Injection Systems, Power Window Motors, and Windshield Washer Systems (together, "**Relevant Parts**") are among the parts at issue in these coordinated multi-district proceedings, *In re Automotive Parts Antitrust Litigation* ("**MDL Litigation**"), Master File No. 2:12-md-2311.[2]

---

[2] For the purposes of the proposed settlement, "**Windshield Wiper Systems**" has the meaning of the term as used in Paragraph 2 of the Corrected Consolidated Amended Class Action Complaint, Case No. 2:13-cv-00903-MOB-MKM (E.D. Mich. filed Feb. 10, 2015), ECF No. 59. "**Radiators**" has the meaning as used in Paragraph 3 of the Second Consolidated Amended Class Action Complaint, Case No. 2:13-cv-01003-MOB-MKM (E.D. Mich. Filed March 29, 2017), ECF No. 186. "**Starters**" has the meaning of the term as used in Paragraph 2 of the Second Consolidated Class Action Complaint, Case No. 2:13-cv-01103-MOB-MKM (E.D. Mich. filed Aug. 26, 2016), ECF No. 135. "**Automotive Lamps**" has the meaning as used in Paragraph 2 of the Second Consolidated Amended Class Action Complaint, Case No. 2:13-cv-01203-MOB-MKM (E.D. Mich. Filed March 29, 2017), ECF No. 81. "**Electric Powered Steering Assemblies**" has the meaning as used in Paragraph 3 of the Third Amended Consolidated Class Action Complaint, Case No. 2:13-cv-01903-MOB-MKM (E.D. Mich. Filed March 29, 2017), ECF No. 193. "**Fan Motors**" has the meaning as used in Paragraph 3 of the Second Consolidated Amended Class Action Complaint, Case No. 2:13-cv-02103-MOB-MKM (E.D. Mich. Filed August 17, 2016), ECF No. 64. "**Fuel Injection Systems**" has the meaning of the term as used in Paragraph 2 of the Second Consolidated Amended Class Action Complaint, Case No. 2:13-cv-02203-MOB-MKM (E.D. Mich. filed Mar. 29, 2017), ECF No. 271. "**Power Window Motors**" has the meaning as used in Paragraph 3 of the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-02303-MOB-MKM (E.D. Mich. Filed June 17, 2014), ECF No. 17. "**Windshield Washer Systems**" has the meaning as used in Paragraph 3 of the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-02803-MOB-MKM (E.D. Mich. Filed June 12, 2014), ECF No. 8. *See* Settlement Agreement ¶ 7.

The Court appointed the undersigned firms as Interim Co-Lead Class Counsel and Interim Liaison Counsel for the End-Payor Plaintiffs' Actions in the Master Docket for MDL No. 2311. *See* Case Management Order No. 3, Master File No. 2:12-md-2311, Case No. 2:12-cv-00100 (Aug. 7, 2012), ECF No. 271. From the inception of these cases, Interim Co-Lead Class Counsel have represented the interests of the EPP classes, including overseeing and directing the prosecution and settlement of the claims brought against MITSUBA. This proposed settlement is a result of those efforts.

EPPs allege that, in furtherance of the alleged conspiracy, Defendants agreed, during meetings and conversations, to unlawfully fix, artificially raise, maintain and/or stabilize prices, rig bids for, and allocate the supply of Windshield Wiper Systems[3], Radiators[4], Starters[5],

---

[3] The defendants in the "**Windshield Wiper Systems**" action are: DENSO Corporation, DENSO International America, Inc., DENSO International Korea Corporation ("DIKR"), DENSO Korea Automotive Corporation, ASMO Co., Ltd., ASMO North America, LLC, and ASMO Greenville of North Carolina, Inc. (collectively, "DENSO"), Mitsuba Corporation and American Mitsuba Corporation, (together, "Mitsuba"), Robert Bosch GmbH, Bosch Electrical Drives Co., Ltd. (f/k/a Korea Automotive Motor Corporation ("KAMCO")) and Robert Bosch LLC (collectively, "Bosch") (collectively, "Defendants"). *See* Corrected Consolidated Amended Class Action Complaint ¶ 1.

[4] The defendants in the "**Radiators**" action are: Calsonic Kansei Corporation, CalsonicKansei North America, Inc. (together, "Calsonic Defendants" or "Calsonic"), DENSO Corporation, DENSO International America, Inc. (together, "DENSO Defendants or "DENSO"), Mitsuba Corporation, American Mitsuba Corporation (together, "Mitsuba Defendants" or "Mitsuba"), (collectively, "Defendants"). *See* Second Consolidated Amended Class Action Complaint ¶ 1.

[5] The defendants in the "**Starters**" action are: DENSO Corporation, DENSO International America, Inc. (together, "DENSO Defendants" or "DENSO"), Hitachi Automotive Systems, Ltd., Hitachi Automotive Systems Americas, Inc. (together, "Hitachi Defendants" or "Hitachi"), Mitsuba Corporation, American Mitsuba Corporation (together, "Mitsuba Defendants" or "Mitsuba"), Mitsubishi Electric Corporation, Mitsubishi Electric Automotive America, Inc. (together, "Mitsubishi Electric Defendants" or "Mitsubishi Electric"), Robert Bosch GmbH and Robert Bosch LLC (collectively, "Bosch Defendants" or "Bosch"), (all as defined below, and collectively, "Defendants"). *See* Second Consolidated Amended Class Action Complaint ¶ 1.

Automotive Lamps[6], Electric Powered Steering Assemblies[7], Fan Motors[8], Fuel Injection

Systems[9], Power Window Motors[10], and Windshield Washer Systems[11], and then sold those

---

[6] The defendants in the "**Automotive Lamps**" action are: Koito Manufacturing Co., Ltd., North American Lighting, Inc. (together, "Koito Defendants" or "Koito"), Mitsuba Corporation, American Mitsuba Corporation (together, "Mitsuba Defendants" or "Mitsuba"), Stanley Electric Co., Ltd., Stanley Electric U.S. Co., Inc., and II Stanley Co., Inc. (collectively, "Stanley Defendants" or "Stanley") (all as defined below, and collectively, "Defendants"). *See* Second Consolidated Amended Class Action Complaint ¶ 1.

[7] The defendants in the "**Electric Powered Steering Assemblies**" action are: JTEKT Corporation, JTEKT Automotive North America, Inc. (together, "JTEKT Defendants" or "JTEKT"), Showa Corporation, American Showa, Inc. (together, "Showa Defendants" or "Showa"), Mitsuba Corporation, American Mitsuba Corporation (together, "Mitsuba Defendants" or "Mitsuba"), Mitsubishi Electric Corporation, Mitsubishi Automotive America, Inc., Mitsubishi Electric US Holdings, Inc. (collectively, "Mitsubishi Defendants" or "Mitsubishi"), NSK Ltd., NSK Steering Systems Co., Ltd., NSK Americas, Inc., NSK Steering Systems America, Inc. (collectively, "NSK Defendants" or "NSK"), Yamada Manufacturing Co., Ltd., and Yamada North America, Inc. (together, "Yamada Defendants" or "Yamada") (all as defined below, and collectively, "Defendants"). *See* Third Amended Consolidated Class Action Complaint ¶ 1.

[8] The defendants in the "**Fan Motors**" action are: DENSO Corporation, DENSO International America, Inc., (together, "DENSO") Mitsuba Corporation and American Mitsuba Corporation (together, "Mitsuba"), (all as defined below, and collectively, "Defendants"). *See* Second Consolidated Amended Class Action Complaint ¶ 1.

[9] The defendants in the "**Fuel Injection Systems**" action are: Aisan Industry Co., Ltd., Franklin Precision Industry, Inc., Aisan Corporation of America, Hyundam Industrial Co., Ltd., (collectively, "Aisan Defendants" or "Aisan"), DENSO Corporation, DENSO International America, Inc., DENSO Internation Korea Corporation ("DIKR") (collectively, "DENSO Defendants" or "DENSO"), Keihin Corporation, Keihin North America, Inc. (together, "Keihin Defendants" or "Keihin"), Maruyasu Industries Co., Ltd. ("Maruyasu"), Mikuni Corporation, Mikuni American Corporation (together, "Mikuni Defendants" or "Mikuni"), Mitsuba Corporation, American Mitsuba Corporation (together, "Mitsuba Defendants" or "Mitsuba"), Mitsubishi Electric Corporation, Mitsubishi Electric US Holdings, Inc., and Mitsubishi Electric Automotive America, Inc. (collectively, "Mitsubishi Defendants" or "Mitsubishi"), Robert Bosch GmbH and Robert Bosch LLC (together, "Bosch Defendants" or "Bosch"), (all as defined below, and collectively, "Defendants"). *See* Second Consolidated Amended Class Action Complaint ¶ 1.

[10] The defendants in the "**Power Window Motors**" action are: DENSO Corporation, DENSO International America, Inc. (together, "Denso Defendants" or "DENSO"), Mitsuba Corporation, American Mitsuba Corporation (together, " Mitsuba Defendants" or "Mitsuba"), (all as defined below, and collectively, "Defendants"). *See* Consolidated Amended Class Action Complaint ¶ 1.

products at supracompetitive prices to automobile manufacturers in the United States and elsewhere.  MITSUBA denies such allegations and has asserted defenses thereto.

The settlement between the EPPs and MITSUBA is meaningful and substantial and will result in a payment of US $72,200,000.00 for the benefit of the EPP Classes, a very significant achievement in this litigation. Standing alone, the monetary recovery from MITSUBA is remarkable, but the settlement is also valuable to the EPPs in that it requires MITSUBA to provide extensive cooperation in the form of, *inter alia*, attorney proffers, interviews with and depositions of witnesses, and the production of certain documents (including transactional data), related to the claims asserted in the Actions. The ability to obtain such assistance without protracted and expensive discovery is extremely valuable to the EPPs. MITSUBA's cooperation agreement will enhance EPPs' ability to prosecute their claims against the remaining Defendants in the non-settled Actions. In addition, MITSUBA has also agreed to refrain from conduct that constitutes a *per se* violation of Section 1 of the Sherman Act (whether characterized as price fixing, market allocation, bid rigging, or otherwise) with respect to the sale of the Relevant Parts for a period of twenty-four (24) months from the date of entry of final judgment. *See* Settlement Agreement ¶ 28.

Additionally, MITSUBA's sales will remain in the Actions for purposes of computing the treble damages claim against the non-settling Defendants in accordance with governing law and shall be part of any joint and several liability claims against other current or future defendants in the Actions. *See* Settlement Agreement ¶ 54. The EPPs and the members of the proposed

---

[11] The defendants in the "**Windshield Washer Systems**" action are: DENSO Corporation, ASMO Co., Ltd., ASMO North America, LLC, ASMO Manufacturing, Inc., and DENSO International America, Inc. (together, "Denso Defendants" or "DENSO"), Mitsuba Corporation and American Mitsuba Corporation (together, "Mitsuba Defendants" or "Mitsuba") (all as defined below, and collectively "Defendants"). *See* Consolidated Amended Class Action Complaint ¶ 1.

Settlement Classes will retain their ability to recover from the remaining Defendants the entire amount of damages caused by the alleged conspiracy, even those attributable to MITSUBA, less only the amount paid by MITSUBA in settlement.

EPPs and their Interim Co-Lead Class Counsel believe, for all the reasons set forth herein, that the settlement with MITSUBA is in the best interest of the proposed Settlement Classes and merits the Court's preliminary approval. EPPs therefore request the entry of an Order:

1.   Preliminarily approving the settlement;

2.   Provisionally certifying the proposed Settlement Classes;

3.   Staying the proceedings against MITSUBA in accordance with the terms of the Settlement Agreement; and

4.   Appointing Interim Co-Lead Class Counsel for EPPs as Settlement Class Counsel for this settlement.

## THE BASIC TERMS AND BACKGROUND OF THE SETTLEMENT AGREEMENT

The Settlement Agreement with MITSUBA arises from extensive arm's length and good faith negotiations, including the assistance of a neutral mediator. EPPs' Interim Co-Lead Class Counsel engaged in extensive informal discovery before entering into the settlement with MITSUBA. Interim Co-Lead Class Counsel also participated in extensive negotiations that took place over a lengthy period of time through in-person meetings, numerous telephone calls and other communications.

**Settlement Classes**:

The Settlement Agreement defines the "Windshield Wiper Settlement Class" as follows:

> All persons and entities that, from January 1, 2000 through the Execution Date, purchased or leased a new Vehicle[12] in the United States not for resale, which included one or more Windshield Wiper System(s) as a component part, or indirectly purchased one

---

[12] "Vehicle" refers to four-wheeled passenger automobiles, vans, sports utility vehicles, and crossover pick-up trucks. *See* Settlement Agreement ¶ 16.

or more Windshield Wiper System(s) as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Windshield Wiper Systems directly or for resale.

Settlement Agreement ¶ 12(a).

The Settlement Agreement defines the "<u>Radiators Settlement Class</u>" as follows:

All persons and entities that, from February 1, 2001 through the Execution Date, purchased or leased a new Vehicle in the United States not for resale, which included one or more Radiator(s) as a component part, or indirectly purchased one or more Radiator(s) as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Radiators directly or for resale.

Settlement Agreement ¶ 12(b).

The Settlement Agreement defines the "<u>Starters Settlement Class</u>" as follows:

All persons and entities that, from January 1, 2000 through the Execution Date, purchased or leased a new Vehicle in the United States not for resale, which included one or more Starter(s) as a component part, or indirectly purchased one or more Starter(s) as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Starters directly or for resale.

Settlement Agreement ¶ 13(c).

The Settlement Agreement defines the "<u>Automotive Lamps Settlement Class</u>" as follows:

> All persons and entities that, from June 1, 1997 through the Execution Date, purchased or leased a new Vehicle in the United States not for resale, which included one or more Automotive Lamp(s) as a component part, or indirectly purchased one or more Automotive Lamp(s) as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Automotive Lamps directly or for resale.

Settlement Agreement ¶ 13(d).

The Settlement Agreement defines the "Electric Powered Steering Assemblies Settlement Class" as follows:

> All persons and entities that, from January 1, 2005 through the Execution Date, purchased or leased a new Vehicle in the United States not for resale, which included one or more Electric Powered Steering Assembly(ies) as a component part, or indirectly purchased one or more Electric Powered Steering Assembly(ies) as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Electric Powered Steering Assemblies directly or for resale.

Settlement Agreement ¶ 13(e).

The Settlement Agreement defines the "Fan Motors Settlement Class" as follows:

> All persons and entities that, from January 1, 2000 through the Execution Date, purchased or leased a new Vehicle in the United States not for resale, which included one or more Fan Motor(s) as a component part, or indirectly purchased one or more Fan Motor(s) as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Fan Motors directly or for resale.

Settlement Agreement ¶ 13(f).

The Settlement Agreement defines the "<u>Fuel Injection Systems Settlement Class</u>" as follows:

> All persons and entities that, from January 1, 2000 through the Execution Date, purchased or leased a new Vehicle in the United States not for resale, which included one or more Fuel Injection System(s) as a component part, or indirectly purchased one or more Fuel Injection System(s) as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Fuel Injection Systems directly or for resale.

Settlement Agreement ¶ 13(g).

The Settlement Agreement defines the "<u>Power Window Motors Settlement Class</u>" as follows:

> All persons and entities that, from January 1, 2000 through the Execution Date, purchased or leased a new Vehicle in the United States not for resale, which included one or more Power Window Motor(s) as a component part, or indirectly purchased one or more Power Window Motor(s) as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Power Window Motors directly or for resale.

Settlement Agreement ¶ 13(h).

The Settlement Agreement defines the "<u>Windshield Washer Systems Settlement Class</u>" as follows:

> All persons and entities that, from January 1, 2000 through the Execution Date, purchased or leased a new Vehicle in the United States not for resale, which included one or more Windshield Washer System(s) as a component part, or indirectly purchased one or more Windshield Washer System(s) as a replacement part, which were manufactured or sold by a Defendant, any

current or former subsidiary of a Defendant, or any co-conspirator of a
Defendant. Excluded from the Settlement Class are Defendants, their parent
companies, subsidiaries and affiliates, any co-conspirators, federal
governmental entities and instrumentalities of the federal government,
states and their subdivisions, agencies and instrumentalities, and persons
who purchased Windshield Washer Systems directly or for resale.

Settlement Agreement ¶ 13(i).

**Settlement Amount**: MITSUBA has agreed to pay US $72,200,000.00 by wiring such funds to an escrow account ("Escrow Account") established at Wells Fargo Bank within thirty (30) days following the later of (i) the entry of an order preliminarily approving the Settlement Agreement, or (ii) the date MITSUBA is provided with wiring instructions. *Id.* ¶¶ 15, 26.

**Allocation**:

- For the Windshield Wipers Systems Settlement Class, $32,895,142.38 plus accrued interest on said deposits set forth in Paragraph 27 of the Settlement Agreement.

- For the Radiators Settlement Class, $3,664,422.11 plus accrued interest on said deposits set forth in Paragraph 27 of the Settlement Agreement.

- For the Starters Settlement Class, $9,457,353.43 plus accrued interest on said deposits set forth in Paragraph 27 of the Settlement Agreement.

- For the Automotive Lamps Settlement Class, $241,876.05 plus accrued interest on said deposits set forth in Paragraph 27 of the Settlement Agreement.

- For the Electric Powered Steering Assemblies Settlement Class, $169,313.23 plus accrued interest on said deposits set forth in Paragraph 27 of the Settlement Agreement.

- For the Fan Motors Settlement Class, $3,664,422.11 plus accrued interest on said deposits set forth in Paragraph 27 of the Settlement Agreement.

- For the <u>Fuel Injection Systems Settlement Class</u>, $1,378,693.47 plus accrued interest on said deposits set forth in Paragraph 27 of the Settlement Agreement.

- For the <u>Power Window Motors Settlement Class</u>, $19,180,770.52 plus accrued interest on said deposits set forth in Paragraph 27 of the Settlement Agreement.

- For the <u>Windshield Washer Systems Settlement Class</u>, $1,548,006.70 plus accrued interest on said deposits set forth in Paragraph 27 of the Settlement Agreement.

*Settlement Agreement.* ¶ 15.

**Cooperation**: MITSUBA agreed to provide extensive cooperation to the EPPs that will significantly aid in their prosecution of claims against the remaining Defendants. A general summary of MITSUBA's cooperation obligations is provided below. The terms of this cooperation are set forth in fuller detail in Section F (¶¶ 34-47) of the Settlement Agreement.  MITSUBA's obligation to cooperate includes, among many other things, the duty to provide:

- <u>Identity of Individuals</u>. Within ten (10) business days of the Execution Date of this Agreement, Counsel for MITSUBA shall provide Settlement Class Counsel with the identity of all current and former employees, directors, and officers of MITSUBA who: (1) were interviewed or prosecuted by any Government Entity in connection with alleged price-fixing, bid rigging, and market allocation of one or more Relevant Parts; (2) appeared before the grand jury in the DOJ's investigation into alleged antitrust violations with respect to one or more Relevant Parts; and/or (3) were disclosed to the DOJ as having knowledge or information relating to the DOJ's investigation into alleged antitrust violations with respect to Relevant Parts. *Id*. ¶ 35.

- <u>Documents</u>. No later than forty-five (45) days after the Execution Date, MITSUBA shall produce to Settlement Class Counsel non-privileged Documents, including any translations, provided to or seized by the DOJ in connection with its investigations into potential violations of competition laws with respect to Relevant Parts. *Id.* ¶ 36.

- <u>Further Cooperation as to "Actively Litigated Parts."</u> With respect to Actively Litigated Parts (defined as Automotive Lamps, Electric Powered Steering Assemblies, Fuel Injection Systems, Radiators, and Starters, provided that each of these parts will remain an Actively Litigated Part only as long as End-Payor Plaintiffs are continuing to pursue claims with respect to that part against a defendant in the MDL Litigation), MITSUBA shall provide the following additional cooperation:

10

a.  *Attorney Proffers*. Within sixty (60) days from the Execution Date MITSUBA's counsel will make themselves available at a mutually agreed location in the United States for a meeting of up to one seven-hour business day for each Actively Litigated Part to provide an attorneys' proffer of facts known to them as to each Actively Litigated Part.  Each attorneys' proffer provided pursuant to this Paragraph shall be contemporaneous with, and not in addition to, the attorneys' proffer as to the same part that MITSUBA has committed to providing under its settlement agreement with the automobile dealership plaintiffs ("Automobile Dealership Plaintiffs") in the MDL Litigation.

b.  *Witness Interviews, Declarations, and Testimony*. Upon the request of Settlement Class Counsel, MITSUBA shall make available at a mutually agreed location in the United States up to eight (8) persons for interviews and depositions, provide eight (8) declarations or affidavits from the same persons, and make those persons available to testify at trial. The eight (8) persons made available under this Paragraph shall be coextensive with, and not in addition to, the eight (8) persons that MITSUBA has similarly committed to making available to the Automobile Dealership Plaintiffs for the same purposes as under this Paragraph. Depositions of these eight (8) persons taken under this Paragraph shall be the same depositions of those persons taken under MITSUBA's settlement agreement with the Automobile Dealership Plaintiffs and not additional depositions. Nothing shall be construed to provide that MITSUBA has control over former employees. The depositions shall be limited to a total of seven (7) hours over one (1) day unless the deposition is in a language other than English, in which case the deposition shall be limited to a total of thirteen (13) hours over two (2) days.

c.  *Documents Collected and Loaded into a Review Tool*. Upon the request of Settlement Class Counsel and subject to the parties' meeting and conferring regarding any extensions concerning the timing of the completion of production, and to the extent that the following Documents have been collected and loaded into a review tool, MITSUBA shall begin to produce Documents (including English translations, to the extent they exist) within sixty (60) days of Settlement Class Counsel's request: (1) Documents, including any translations, provided to or seized by Government Entities relating to their investigation into alleged competition violations with respect to Actively Litigated Parts; (2) non-privileged Documents concerning Actively Litigated Parts collected and reviewed in connection with a communication, meeting, or agreement regarding Actively Litigated Parts, by any employee, officer, or director of MITSUBA with any employee, officer, or director of another manufacturer or seller of Actively Litigated Parts, but that were not provided to or seized by Government Entities; (3) Documents concerning MITSUBA's determination of MITSUBA's prices for Actively Litigated Parts; and (4) Documents soliciting requests for quotation ("RFQ"), bids submitted in response to RFQs, RFQ award notifications, and post-award price adjustments for Actively Litigated Parts, including any Annual Price Reduction ("APR") Documents. Subject to the meet-and-confer referenced above, MITSUBA shall complete the production of the aforementioned Documents within one-hundred and twenty (120) days of Settlement Class Counsel's request.

  d. *Documents Not Collected and Loaded into a Review Tool*. Upon the request of Settlement Class Counsel and subject to the parties' meeting and conferring regarding any extensions concerning the timing of the completion of production, and to the extent that the following Documents have not been collected and loaded into a review tool, MITSUBA shall use reasonable best efforts to produce such Documents (including English translations, to the extent they exist) from centrally-maintained files and from the files of a reasonable number of custodians to be identified by End-Payor Plaintiffs within two hundred and seventy-five (275) days of Settlement Class Counsel's request: (1) Documents, including any translations, provided to or seized by Government Entities relating to their investigation into alleged competition violations with respect to Actively Litigated Parts; (2) non-privileged Documents concerning Actively Litigated Parts collected and reviewed in connection with a communication, meeting, or agreement regarding Actively Litigated Parts, by any employee, officer or director of MITSUBA with any employee, officer, or director of another manufacturer or seller of Actively Litigated Parts, but that were not provided to or seized by Government Entities; (3) Documents concerning MITSUBA's determination of MITSUBA's prices for Actively Litigated Parts; and (4) Documents soliciting requests for quotation ("RFQ"), bids submitted in response to RFQs, RFQ award notifications, and post-award price adjustments for Actively Litigated Parts, including any Annual Price Reduction ("APR") Documents. To the extent that any such Documents described by this Paragraph 37(d) are not maintained in an active computer system or otherwise require special efforts or procedures to collect and produce, Settlement Class Counsel and MITSUBA shall meet and confer on collecting and producing such Documents.

  e. *Authentication and Foundation for Admissibility of Documents and Records*. Upon Settlement Class Counsel's reasonable request, MITSUBA will produce through affidavit(s), declaration(s), and/or at trial, in Settlement Class Counsel's discretion, representatives qualified to provide truthful testimony for purposes of authenticating, establishing as a business record, or otherwise establishing any other necessary foundation for admission into evidence of any Documents or transactional data produced or to be produced by MITSUBA. Settlement Class Counsel agrees to use their best efforts to obtain stipulations that would avoid the need to call MITSUBA witnesses at trial for the purpose of obtaining such evidentiary foundations.

  f. *Transactional Data*. Subject to the parties' meeting and conferring regarding any extensions concerning the timing of the completion of production, MITSUBA will use its reasonable best efforts to complete within sixty (60) days after Settlement Class Counsel's request, the production of transactional data concerning MITSUBA's sales of Actively Litigated Parts from June 1, 1995 through the Execution Date, but only to the extent that it exists, is reasonably accessible in MITSUBA's electronic databases (not to include back-up systems or back-up disks/tapes), and that there is a reasonable likelihood that such sales were associated with parts that were incorporated into vehicles sold in the United States. In addition, MITSUBA will provide, in response to a written request from Settlement Class

12

Counsel, a single production of electronic transactional data generated during the two years after the Execution Date of this Agreement concerning Actively Litigated Parts, as it exists in MITSUBA's electronic databases at the time of the request, within (60) days of the receipt of such request, subject to the parties' meeting and conferring regarding any extensions concerning the timing of the completion of production. MITSUBA shall preserve such transactional data until two (2) years after the Execution Date of this Agreement. MITSUBA will produce transaction data only from existing electronic transaction databases, except that to the extent MITSUBA has not recorded or maintained electronic transaction data for any period between June 1, 1995 and two (2) years from the Execution Date of this Agreement, MITSUBA will use reasonable efforts to produce existing hard copy records of sales transactions not recorded or maintained electronically in the existing electronic sales transaction database. Settlement Agreement ¶ 37.

- <u>Further Cooperation as to Relevant Parts other than Actively Litigated Parts.</u> With respect to Relevant Parts other than Actively Litigated Parts, if End-Payor Plaintiffs initiate or resume active litigation against a defendant with respect to one or more Relevant Parts for any reason, such Relevant Parts shall be considered "Reactivated Parts." As to such Reactivated Part(s), unless End-Payor Plaintiffs initiate or resume active litigation against MITSUBA with respect to the same Reactivated Part(s) or are likely to do so, MITSUBA shall provide the following additional cooperation until otherwise ordered by the Court, or the date that final judgment has been entered in the respective action against all defendants unless this Agreement is rescinded, disapproved, or otherwise fails to take effect. Settlement Agreement ¶ 38.

    a.    *Attorney Proffers*. Within sixty (60) days after Settlement Class Counsel's request as to a Reactivated Part, MITSUBA's counsel will make themselves available at a mutually agreed location in the United States for a meeting of up to one seven-hour business day to provide an attorneys' proffer of facts known to them as to that Reactivated Part. Each attorneys' proffer provided pursuant to this Paragraph shall be contemporaneous with, and not in addition to, the attorneys' proffer as to the same part that MITSUBA has committed to providing under its settlement agreement with the Automobile Dealership Plaintiffs.

    b.    *Witness Interviews, Declarations, and Testimony*. Upon the request of Settlement Class Counsel as to each Reactivated Part, MITSUBA shall make available at a mutually agreed location in the United States up to two (2) persons for interviews and depositions, provide two (2) declarations or affidavits from the same persons, and make those same persons available to testify at trial. For each Reactivated Part, the two (2) persons made available under this Paragraph shall be coextensive with, and not in addition to, the two (2) persons that MITSUBA has similarly committed to making available under MITSUBA's settlement agreement with the Automobile Dealership Plaintiffs for the same purposes as under this Paragraph. Depositions of the two (2) persons per each Reactivated Part taken under this Paragraph shall be the same depositions of those persons taken under MITSUBA's settlement agreement with the Automobile Dealership Plaintiffs and not additional depositions. The depositions shall be limited to a total of seven (7) hours over one

(1) day unless the deposition is in a language other than English, in which case the deposition shall be limited to a total of thirteen (13) hours over two (2) days. Nothing shall be construed to provide that MITSUBA has control over former employees.

c.   *Documents Collected and Loaded into a Review Tool*. Upon the request of Settlement Class Counsel and subject to the parties' meeting and conferring regarding any extensions concerning the timing of the completion of production, and to the extent that the following Documents have been collected and loaded into a review tool, MITSUBA shall begin to produce Documents (including English translations, to the extent they exist) within sixty (60) days of Settlement Class Counsel's request: (1) Documents, including any translations, provided to or seized by Government Entities relating to their investigation into alleged competition violations with respect to Reactivated Part(s); (2) non-privileged Documents concerning Reactivated Part(s) collected and reviewed in connection with a communication, meeting, or agreement regarding Reactivated Part(s), by any employee, officer, or director of MITSUBA with any employee, officer, or director of another manufacturer or seller of Reactivated Part(s), but that were not provided to or seized by Government Entities; (3) Documents concerning MITSUBA's determination of MITSUBA's prices for Reactivated Part(s); and (4) Documents soliciting requests for quotation ("RFQ"), bids submitted in response to RFQs, RFQ award notifications, and post-award price adjustments for Reactivated Part(s), including any Annual Price Reduction ("APR") Documents. Subject to the meet-and-confer referenced above, MITSUBA shall complete the production of the aforementioned Documents within one-hundred and twenty (120) days of Settlement Class Counsel's request.

d.   *Documents Not Collected and Loaded into a Review Tool*. Upon the request of Settlement Class Counsel and subject to the parties' meeting and conferring regarding any extensions concerning the timing of the completion of production, and to the extent that the following Documents have not been collected and loaded into a review tool, MITSUBA shall use reasonable best efforts to produce such Documents (including English translations, to the extent they exist) from centrally-maintained files and from the files of a reasonable number of custodians to be identified by End-Payor Plaintiffs within two hundred and seventy-five (275) days of Settlement Class Counsel's request: (1) Documents, including any translations, provided to or seized by Government Entities relating to their investigation into alleged competition violations with respect to Reactivated Part(s); (2) non-privileged Documents concerning Reactivated Part(s) collected and reviewed in connection with a communication, meeting, or agreement regarding Reactivated Part(s), by any employee, officer or director of MITSUBA with any employee, officer, or director of another manufacturer or seller of Reactivated Part(s), but that were not provided to or seized by Government Entities; (3) Documents concerning MITSUBA's determination of MITSUBA's prices for Reactivated Part(s); and (4) Documents soliciting requests for quotation ("RFQ"), bids submitted in response to RFQs, RFQ award notifications, and post-award price adjustments for Reactivated Part(s), including any Annual Price Reduction ("APR") Documents.

14

e.    *Authentication and Foundation for Admissibility of Documents and Records*. Upon Settlement Class Counsel's reasonable request, MITSUBA will produce through affidavit(s), declaration(s), and/or at trial, in Settlement Class Counsel's discretion, representatives qualified to provide truthful testimony for purposes of authenticating, establishing as a business record, or otherwise establishing any other necessary foundation for admission into evidence of any Documents or transactional data produced or to be produced by MITSUBA. Settlement Class Counsel agrees to use their best efforts to obtain stipulations that would avoid the need to call MITSUBA witnesses at trial for the purpose of obtaining such evidentiary foundations.

f.    *Transactional Data*. Subject to the parties' meeting and conferring regarding any extensions concerning the timing of the completion of production, MITSUBA will use its reasonable best efforts to complete the production of transactional data, no later than sixty (60) days after Settlement Class Counsel's request, concerning MITSUBA's sales of Reactivated Part(s) from June 1, 1995 through the Execution Date but only to the extent that it exists, is reasonably accessible in MITSUBA's electronic databases (not to include back-up systems or back-up disks/tapes), and that there is a reasonable likelihood that such sales were associated with parts that were incorporated into vehicles sold in the United States. In addition, MITSUBA will provide, in response to a written request from Settlement Class Counsel, a single production of electronic transactional data generated during the two years after the Execution Date of this Agreement concerning Reactivated Part(s), as it exists in MITSUBA's electronic databases at the time of the request, within (60) days of the receipt of such request, subject to the parties' meeting and conferring regarding any extensions concerning the timing of the completion of production. MITSUBA shall preserve such transactional data until five (5) years after the Execution Date of this Agreement. MITSUBA will produce transaction data only from existing electronic transaction databases, except that to the extent MITSUBA has not recorded or maintained electronic transaction data for any period between June 1, 1995 and two (2) years from the Execution Date of this Agreement, MITSUBA will use reasonable efforts to produce existing hard copy records of sales transactions not recorded or maintained electronically in the existing electronic sales transaction database.

Settlement Agreement ¶ 38.

• __Identification of Vehicles.__ MITSUBA has already provided End-Payor Plaintiffs with information reasonably available to MITSUBA to identify Vehicles sold in the United States from January 1, 2000 through September 6, 2017 that contain Relevant Parts sold by MITSUBA.  After conducting a reasonable search, MITSUBA shall, to the best of its knowledge, identify those additional Vehicles sold in the United States from June 1, 1997 through December 31, 1999 that contain Automotive Lamps sold by MITSUBA. To the extent that this information is insufficient to identify all such Vehicles, MITSUBA shall confer in good faith with End-Payor Plaintiffs to assess whether further reasonable efforts are likely to result in the identification of additional Vehicles and if so, MITSUBA shall

undertake any such reasonable efforts to provide End-Payor Plaintiffs with the identities of any Vehicles not already identified. Settlement Agreement ¶ 39.

•     <u>Further Cooperation as to Parts other than Relevant Parts</u>. With respect to any automotive part that is the subject of the MDL Litigation that is not a Relevant Part, MITSUBA will consider in good faith any reasonable request by End-Payor Plaintiffs to provide information regarding collusion with respect to any such automotive part and to collect and produce Documents (including English translations, to the extent they exist) in MITSUBA's possession, custody, or control regarding any such part, provided, however, that MITSUBA shall be entitled to seek reimbursement from End-Payor Plaintiffs of its costs of providing such information or producing such Documents to the same extent as if MITSUBA were responding to a subpoena served pursuant to Rule 45 of the Federal Rules of Civil Procedure. Settlement Agreement ¶ 40.

**Injunction**: MITSUBA has agreed for a period of twenty-four (24) months from the date of the entry of final judgments in the Actions not to engage in conduct that constitutes a *per se* violation of Section 1 of the Sherman Act (whether characterized as price fixing, market allocation, bid rigging, or otherwise) with respect to the sale of Relevant Parts. *Id.* ¶ 28.

**Released Claims**: The Settlement Agreement releases only (i) MITSUBA, (ii) all of MITSUBA's past and present direct and indirect, parents, subsidiaries and affiliates, including their respective predecessors, successors and assigns, and (iii) each and all of the present and former principals, partners, officers, directors, supervisors, employees, associates, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, and assigns of each of the persons and each of the persons and entities listed in (i) and (ii). "Releasees" does not include any defendant in the MDL Litigation other than MITSUBA. *Id.* ¶ 10.

The release does not include: (1) any claims made by direct purchasers of Relevant Parts; (2) any claims made by automotive dealerships that are indirect purchasers of Relevant Parts; (3) any claims made by any State, State agency, or instrumentality or political subdivision of a State as to government purchases and/or penalties; (4) claims involving any negligence, personal injury, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, securities or similar claim relating to Relevant Parts; (5) claims concerning any automotive

part other than Relevant Parts; (6) claims under laws other than those of the United States relating to purchases of Relevant Parts made by any Releasor outside of the United States; and (7) claims for damages under the state or local laws of any jurisdiction other than an Indirect Purchaser State. *Id.* ¶ 24. The Settlement Agreement also provides that sales shall remain in the continuing litigation against any current or future Defendants, who remain jointly and severally liable for all damages caused by the conspiracies. *Id.* ¶ 54.

## ARGUMENT

The Settlement Agreement is not only fair, reasonable, and adequate—resulting from extensive arm's length negotiations by experienced counsel—but also a thoughtfully conceived resolution of the proposed Settlement Classes' claims that maximizes their recovery and guarantees cooperation by MITSUBA in the continued prosecution of EPPs' claims.

**I.    Preliminary Approval Should be Granted Because the Proposed Settlement Falls Well Within the Range of Possible Approval.**

It is well-established in the Sixth Circuit that there is an overriding public interest in settling and quieting litigation, particularly class actions. *See Griffin v. Flagstar Bancorp, Inc.*, Case No. 2:10-cv-10610, 2013 U.S. Dist. LEXIS 173702, at *6 (E.D. Mich. Dec. 12, 2013) (citing *UAW v. Gen. Motors. Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions")); *see also IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006). "This policy applies with equal force whether the settlement is partial, involving only some of the defendants, or complete." *In re Packaged Ice Antitrust Litig.*, Case No. 08-MD-01952, 2011 U.S. Dist. LEXIS 17255, at *44 (E.D. Mich. Feb. 22, 2011) ("*Packaged Ice*"); *see also Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992) ("In complex litigation with a plaintiff class, 'partial settlements often play a vital role in resolving class actions'" (quoting MANUAL FOR COMPLEX LITIGATION (SECOND) § 30.46 (1986)). In fact, "settlement should be

17

facilitated at as early a stage of the litigation as possible." 6A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1522, at 225-26 (2d ed. 1990) (citing 1983 Advisory Committee Notes); *see also* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 13.12 (2004) ("*Manual*") ("[S]ettlement should be explored early in the case.").

Approval of a proposed class action settlement proceeds in two steps. First, the court grants preliminary approval to the settlement and provisionally certifies a settlement class. Second, after notice of the settlement is provided to the class and the court conducts a fairness hearing, the court may grant final approval of the settlement. *See Manual* § 21.63; *see also Bobbitt v. Acad. of Reporting*, No. 07-10742, 2009 U.S. Dist. LEXIS 62365, at *1 (E.D. Mich. Jul. 21, 2009) (citing authorities).

A proposed settlement agreement should be preliminarily approved if "the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies . . . and [the settlement] appears to fall within the range of possible approval." *Manual* § 30.41; *see also Int'l Union, UAW v. Ford Motor Co*., Case Nos. 05-74730, 06-10331, 2006 U.S. Dist. LEXIS 70471, at *11 (E.D. Mich. July 13, 2006). The district court's role in reviewing settlements "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Clark Equip. Co. v Int'l Union of Allied Industrial Workers of Am*., 803 F.2d 878, 880 (6th Cir. 1986). Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2005) ("*Newberg*") (collecting cases); *cf. Rankin v. Rots*, No. 02-cv-71045, 2006 U.S. Dist. LEXIS

45706, at *9 (E.D. Mich. June 28, 2006) ("[T]he only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.") (internal quotation marks omitted).

In considering whether to grant preliminary approval, the court is not required at this point to make a final determination of the adequacy of the settlement or to delve extensively into the merits of the settlement. *See In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, Case No. 1:01-cv-9000, 2001 U.S. Dist. LEXIS 26714, at *17 (E.D. Ohio Oct. 19, 2001) ("*Sulzer Hip*"). These inquiries are reserved for the final approval stage of the class settlement approval process. Nor will any class member's substantive rights be prejudiced by preliminary approval because the proposed preliminary approval is solely to provide authority for notifying the class of the terms of the settlement agreement to set the stage for review of its final approval. *Id.; Newburg* § 11.25. Consequently, courts generally engage only in a limited inquiry to determine whether a proposed settlement falls within the range of possible approval and thus should be preliminarily approved. *Sulzer Hip*, 2001 U.S. Dist. LEXIS 26714, at *17-18 (preliminary approval may be based on "informal presentations" because of "substantial judicial processes that remain") (quoting MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.662 at p. 460 (2004)). *See also In re Packaged Ice Antitrust Litig.*, No. 08-md-01952, 2010 U.S. Dist. LEXIS 77645, at *35 (E.D. Mich. Aug. 2, 2010) (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) (inquiry limited to settlement's potential for final approval and propriety of class notice and fairness hearing).

In evaluating whether a settlement is fair, reasonable and adequate, courts in the Sixth Circuit consider a number of factors:

> (1) the likelihood of success on the merits weighed against the amount and form of relief in the settlement; (2) the complexity expense and likely duration of the litigation; (3) the opinions of class counsel and class representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent class members; (6) the risk of fraud or collusion;

and (7) the public interest. The Court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case.

*Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *46-47 (quotation marks and citations omitted).

A court is not required at the preliminary approval stage to determine whether it ultimately will finally approve the settlement. Nevertheless, as set forth in detail below, preliminary consideration of the factors a court considers when evaluating the fairness of a settlement for purposes of deciding whether to grant final approval supports this Court's granting preliminary approval of the Settlement Agreement.

### A.   The Settlement Agreement Achieves an Excellent Result for the Proposed Settlement Classes, Particularly Given the Expense, Duration, and Uncertainty of Continued Litigation.

Antitrust class actions are "arguably the most complex action(s) to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome." *In re Packaged Ice Antitrust Litig.*, Case No. 08-md-01952, 2011 U.S. Dist. LEXIS 150427, at *76 (E.D. Mich. Dec. 13, 2011) (quoting *Linerboard*, 292 F. Supp.2d at 639); *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 533 (E.D. Mich. 2003) ("*Cardizem*") ("Moreover, the complexity of this case cannot be overstated. Antitrust class actions are inherently complex"). Motions have already been vigorously contested, and the discovery process would be all the more complicated due to the unique issues involved in discovery against foreign parties.

Additionally, MITSUBA would presumably vigorously oppose class certification and would assert various defenses if the class were certified.  If the Actions reached a jury, the jury trial might well turn on close questions of proof, many of which would be the subject of complicated expert testimony, particularly with regard to damages, making the outcome of such trial uncertain for both parties. *See, e.g.*, *Cardizem*, 218 F.R.D. at 523 (in approving settlement, noting that "the prospect of a trial necessarily involves the risk that Plaintiffs would obtain little

or no recovery and that "no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation"); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *53-54 (noting the "undeniable inherent risks" in antitrust class action litigation including "whether the class will be certified and upheld on appeal, whether the conspiracy as alleged in the Complaint can be established, whether Plaintiffs will be able to demonstrate class wide antitrust impact and ultimately whether Plaintiffs will be able to prove damages"). *Id.* Given this uncertainty, "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

Moreover, given the stakes involved, an appeal is nearly certain to follow regardless of the outcome at trial. This creates additional risk, as judgments following trial may be overturned on appeal. *See, e.g.*, *In re Farmers Ins. Exchange, Claims Representatives' Overtime Pay Litig.*, 481 F.3d 1119 (9th Cir. 2007) ($52.5 million class action judgment following trial reversed on appeal); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs reversed and judgment entered for defendant). And even if class members were willing to assume all of the litigation risks, the passage of time would introduce still more risks in terms of appeals and possible changes in the law that would, in light of the time value of money, make future recoveries less valuable than recovery today. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004) ("[I]t was inevitable that post-trial motions and appeals would not only further prolong the litigation but also reduce the value of any recovery to the class."); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 501 (W.D. Pa. 2003) ("[A] future recovery, even one in excess of the proposed Settlement, may ultimately prove less valuable to the Class than receiving the benefits of the proposed Settlement at this time"). Hence, "the certain and immediate

21

benefits to the Class represented by the Settlement outweigh the possibility of obtaining a better result at trial, particularly when factoring in the additional expense and long delay inherent in prosecuting this complex litigation through trial and appeal." *Cardizem*, 218 F.R.D. at 525.

Against this background, a settlement providing the substantial benefits afforded here represents an excellent result for the members of the proposed Settlement Classes. MITSUBA's $72,200,000 payment provides for significant compensation to the proposed Settlement Classes that will be available years earlier than would be the case if litigation against MITSUBA continued through trial and appeal.

Of particular importance is the fact that the Settlement Agreement requires MITSUBA to provide substantial discovery cooperation to Interim Co-Lead Class Counsel by providing attorney proffers, interviews, depositions, and certain documents, among other cooperation. *See* Settlement Agreement § F ¶¶ 34-47. This cooperation is a significant class-wide benefit. *See, e.g.*, *In re Packaged Ice,* 2010 U.S. Dist. LEXIS 77645, at *44 ("Particularly where, as here, there is the potential for a significant benefit to the class in the form of cooperation on the part of the settling Defendant, this Court is reluctant to refuse to consider the very preliminary approval that will trigger that cooperation"); *see also Linerboard*, 292 F. Supp. 2d at 643; *In re Corrugated Container Antitrust Litigation*, MDL 310, 1981 U.S. Dist. LEXIS 9687, at *49 (S.D. Tex. June 4, 1981); *cf. In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008) ("[T]he benefit of obtaining the cooperation of the Settling Defendants tends to offset the fact that they would be able to withstand a larger judgment.").

The Settlement Agreement also specifically provides that it does not alter the non-settling Defendants' joint and several liability for the full damages caused by the alleged conspiracies, including all sales made by the MITSUBA Defendants. *See* Settlement Agreement ¶ 54. In this

regard, the Settlement Agreement is similar to one of the settlements approved in *Corrugated Container*, where the court noted the "valuable provision" under which plaintiffs reserved their right to recover full damages from the remaining Defendants, less the actual amount of the initial settlement. 1981 WL 2093, at \*17; *see also In re Uranium Antitrust Litig.*, 617 F.2d 1248 (7th Cir. 1980); *In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (approving settlement where class will "relinquish no part of its potential recovery" due to joint and several liability). Here too, the EPPs will be able to pursue their full damages, with no diminution other than deduction of the actual MITSUBA settlement amount.

### B.     The Settlement Agreement is the Result of Thorough Arm's-Length Negotiations Conducted By Highly Experienced Counsel.

This settlement is entitled to "an initial presumption of fairness" because it is the result of arm's-length negotiations among experienced counsel. Newberg § 11.41. The judgment of proposed Settlement Class Counsel that the settlement is in the best interest of the proposed Settlement Class "is entitled to significant weight, and supports the fairness of the class settlement." *Sheick v. Auto Component Carrier LCC*, Case No. 2:09-cv-14429, 2010 U.S. Dist. LEXIS 110411, at \*51 (E.D. Mich. Oct. 18, 2010) (quoting *IUE-CWA*, 238 F.R.D. at 597); *see also Cardizem*, 218 F.R.D. at 525. Courts give great weight to the recommendation of experienced counsel for the parties in evaluating the adequacy of a settlement.

"Preliminary approval of a proposed settlement is based upon the court's familiarity with the issues and evidence, as well as the arms-length nature of the negotiations prior to the proposed settlement, ensuring that the proposed settlement is not illegal or collusive." *Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262 (E.D. Ky. 2009) (quoting *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 370 (S.D. Ohio 1990)). The Settlement Agreement here is the result of lengthy and hard-fought negotiations between counsel experienced in complex

antitrust and consumer class action litigation. The settlement was negotiated for many months by Interim Co-Lead Class Counsel in a process that involved numerous discussions with counsel for MITSUBA. Interim Co-Lead Class Counsel undertook a diligent and thorough investigation of the legal and factual issues posed by this litigation and consulted with experienced economists before negotiating this deal.

Interim Co-Lead Class Counsel for the EPPs were well-informed about the facts and the strength of the claims asserted when the terms of the Settlement Agreement were negotiated. *See Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *56 ("[T]he absence of formal discovery is not an obstacle [to settlement approval] so long as the parties and the Court have adequate information in order to evaluate the relative position of the parties.") (quotation marks and citation omitted); *Griffin v. Flagstar Bancorp, Inc.*, 2013 U.S. Dist. LEXIS 173702 (same).

Moreover, these negotiations were adversarial and conducted in the utmost good faith. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt v. ArvinMeritor, Inc.,* 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008); *Bowers v. Windstream Ky. East, LLC*, Case No. 3:09-cv-440-H, 2013 U.S. Dist. LEXIS 157242, at *5 (W.D. Ky. Nov. 1, 2013). There is nothing in the course of the negotiations or the substance of the settlement that discloses grounds to doubt its fairness – "[w]here a class settlement has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair." *Manual* § 21.662 at 464.

## II. The Proposed Settlement Classes Should Be Provisionally Certified Pursuant to Rule 23.

The Manual notes the propriety of certifying a class solely for purposes of settlement, *see Manual* § 21.32, and courts in this Circuit routinely provisionally approve a proposed settlement class before deciding plaintiffs' motion for class certification. *See, e.g.*, *In re Delphi Corp. Sec.*

*Derivatives & ERISA Litig.*, 248 F.R.D. 483, 486 n. 2 (E.D. Mich. 2008) (granting final approval to both ERISA and Securities settlement classes, noting the court's earlier, preliminary approval of the settlement classes granted prior to a hearing on defendants' motions to dismiss); *Cardizem*, 218 F.R.D. at 516-17, 530 (granting final approval of proposed settlement, noting its earlier preliminary approval of both the proposed settlement class and the proposed settlement agreement granted prior to class certification and prior to hearing on motions to dismiss).  A court may grant provisional certification where, as here, the proposed settlement class satisfies the four prerequisites of Rule 23(a) (numerosity, commonality, typicality and adequacy), as well as one of the three subsections of Rule 23(b). *See In re Packaged Ice Antitrust Litig.*, No. 08-md-01952, 2010 U.S. Dist. LEXIS 140235, at *27-28 (E.D. Mich. Sept. 2, 2010).

While in the context of a litigated class certification motion, a trial court must conduct a "rigorous analysis" to confirm that the requirements of Rule 23 have been met, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011), even in that context "the requisite 'rigorous analysis' of the record and consideration of the merits must be focused on and limited to the question whether the Rule's requirements have been established." *Cason-Merenda v. VHS of Mich., Inc.*, 296 F.R.D. 528 (E.D. Mich. 2013)*, vacated,* No. 13-0113, 2014 U.S. App. LEXIS 4447 (6th Cir. Jan. 6, 2014), *reinstated in full,* No. 06-15601, 2014 U.S. Dist. LEXIS 29447 (E.D. Mich. Mar. 7, 2014) (citing *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 851-52 (6th Cir. 2013)). Permissible inquiry into the merits of plaintiffs' claims at the class certification stage is limited:

> Rule 23 grants courts no license to engage in free-ranging merits inquiries at the class certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013) ("*Amgen*") (citing *Dukes*, 131 S. Ct. at 2552 n.6). "In other words, district courts may not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *In re Whirlpool Corp.*, 722 F.3d 838, 851-52 (internal quotation marks and citation omitted).  Here, as demonstrated below, even under a "rigorous analysis," the requirements of Rule 23 are easily met.

### A.      The Proposed Settlement Classes Meet the Requirements of Rule 23(a).

Horizontal price fixing class actions are routinely certified by courts in this District and elsewhere. EPPs' allegations of "a per se violation of the antitrust laws are exactly the kind of allegations which may be proven on a class-wide basis through common proof." *In re Southeastern Milk Antitrust Litig.*, Case No. 2:09-md-1000, 2010 U.S. Dist. LEXIS 94223, at *35 (E.D. Tenn. Sept. 7, 2010). "Courts have held that the existence of a conspiracy is the predominant issue in price fixing cases, warranting certification of the class even where significant individual issues are present."  *Id.* at *33 (internal quotation marks and citations omitted). "As a rule of thumb, a price fixing antitrust conspiracy model is generally regarded as well suited for class treatment." *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 409 (S.D. Ohio 2007); *see also Hyland v. Homeservices of Am., Inc.*, Case No. 3:05-cv-612-R, 2008 U.S. Dist. LEXIS 90892, at *12 (W.D. Ky. Nov. 6, 2008).

### i.      The Proposed Settlement Classes Are So Numerous That It Is Impracticable to Bring All Class Members Before the Court.

No magic number is required to satisfy the numerosity requirement of Rule 23(a)(1). *Miller v. Univ. of Cincinnati*, 241 F.R.D. 285, 288 (S.D. Ohio 2006). A class representative need only show that joining all members of the potential class is extremely difficult or inconvenient. *Golden v. City of Columbus*, 404 F.3d 950, 965 (6th Cir. 2005). The "sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy

Rule 23(a)(1)." *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 403 (citing *Bacon v. Honda of America Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004)); *see also In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

Here, the proposed Settlement Classes consist of all persons and entities who, from June 1, 1997 through the Execution Date of the Settlement Agreement between Defendant MITSUBA and the EPPs, purchased or leased a new Vehicle in the United States not for resale which included one or more Relevant Parts as a component part or indirectly purchased one or more Relevant Parts as a replacement part. *See* Settlement Agreement ¶ 12. Within this period, it is beyond dispute that millions of persons and entities throughout the United States have purchased or leased Vehicles containing Relevant Parts not for resale or indirectly purchased Relevant Parts as a replacement part. As a result of the large number of putative class members and their geographic distribution throughout the United States, joinder is highly impractical – if not impossible.

      **ii.**      **End-Payor Plaintiff Class Representatives and the Proposed Settlement Classes Share Common Legal and Factual Questions.**

Commonality only requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). While Rule 23(a)(2) speaks of questions of law or fact in the plural, "there need be only one common question to certify a class." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d at 853; *see also Cason-Merenda*, 296 F.R.D. at 536 (one common question of law or fact is sufficient); *Griffin v. Flagstar Bancorp Inc.*, 2013 U.S. Dist. LEXIS 173702 (same); *Date v. Sony Elecs., Inc.*, Case No. 07-15474, 2013 U.S. Dist. LEXIS 108095, at *10 (E.D. Mich. July 31, 2013) (same).

This prerequisite is readily satisfied here because "[a]ntitrust price-fixing conspiracy cases, by their nature, deal with common legal and factual questions about the existence, scope and effect of the alleged conspiracy." *In re Aluminum Phosphide Antitrust Litig.*, 160 F.R.D. 609, 613 (D.

Kan. 1995). Thus, in price-fixing cases, courts "have consistently held that the very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. 02-md-1486, 2006 U.S. Dist. LEXIS 39841, at *29 (N.D. Cal. June 5, 2006); *see also* Newberg § 3:10 at 278 ("[In an] antitrust action on behalf of purchasers who have bought defendants' products at prices that have been maintained above competitive levels by unlawful conduct, the courts have held that the existence of an alleged conspiracy or monopoly is a common issue that will satisfy the Rule 23(a)(2) prerequisite").

Here, EPPs have identified the following issues common to the proposed Settlement Classes:

- Whether the Defendants engaged in a combination and conspiracy among themselves to fix, raise, maintain, or stabilize the prices of Relevant Parts sold in the United States;

- Whether the Defendants engaged in a combination and conspiracy among themselves to rig bids quoted to customers of Relevant Parts sold in the United States;

- Whether the Defendants engaged in a combination and conspiracy to allocate customers and the markets for Relevant Parts sold in the United States;

- The duration of the illegal conspiracy; and

- Whether Defendants' conduct resulted in unlawful overcharges on the prices of Relevant Parts.

Any one of these substantive issues would, standing alone, establish the requisite commonality under Rule 23(a)(2).

### iii. End-Payor Plaintiff Class Representatives' Claims Are Typical of the Claims of the Members of the Proposed Settlement Classes.

Third, Rule 23(a) requires typicality of the class representatives' claims. *See* Fed. R. Civ. P. 23(a)(3). "The [typicality] requirement is not onerous," *Int'l Union, UAW v. Ford Motor Co.*, 2006 U.S. Dist. LEXIS 70471, at *54, and courts liberally construe it. *See In re Foundry Resins*

*Antitrust Litig.*, 242 F.R.D. at 403. "In the antitrust context, typicality is established when the named plaintiffs and all class members allege[] the same antitrust violation by defendants." *Cason-Merenda*, 296 F.R.D. at 537 (quoting *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 405); *see also Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000); *In re Am. Med. Sys.*, 75 F.3d at 1082; *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *40-41. "If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members." *Griffin v. Flagstar Bancorp, Inc.*, 2013 U.S. Dist. LEXIS 173702, at *17-18 (quotation marks and citation omitted); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *40 (same).

Because the End-Payor Plaintiff Class Representatives and the members of the proposed Settlement Classes believe they are all victims of the conspiracy to fix prices, rig bids, and allocate the market and customers for Relevant Parts, Rule 23(a)(3) is satisfied. *See Cason-Merenda*, 296 F.R.D. at 537 (finding typicality met where "the claims of the named Plaintiffs and those of the remaining members of the proposed class all arise from the same conspiracy and are based on the same theory of liability under the Sherman Act.") (internal quotation marks and citation omitted)); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *40-41 ("Because all Class Members' claims arise from . . . a conspiracy to allocate markets in violation of the Sherman Act, their claims are based on the same legal theory and the typicality requirement . . . is met").

### iv. Proposed Settlement Class Counsel and End-Payor Plaintiff Class Representatives Will Fairly and Adequately Protect the Interests of the Proposed Settlement Classes.

The final requirement of Rule 23(a) is that the representative parties "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Sixth Circuit has articulated two criteria for determining adequacy of representation: "'1) [t]he representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will

vigorously prosecute the interests of the class through qualified counsel.'" *In re Foundry Resins Antitrust Litig.,* 242 F.R.D. at 407 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)). EPPs submit that there are no conflicts between them and the proposed Settlement Classes because EPPs and members of the proposed Settlement Classes: (i) purchased or leased in the United States Vehicles containing Relevant Parts; and/or (ii) indirectly purchased Relevant Parts as a replacement part, and have the same interest in establishing liability. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) (certifying settlement class and holding that "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes" (internal quotation marks and citation omitted)). EPPs and the members of the proposed Settlement Classes also share a common interest in obtaining MITSUBA's substantial cooperation.

Rule 23(g) requires the Court to examine the capabilities and resources of class counsel to determine whether they will provide adequate representation to the class. The proposed Settlement Classes are represented by counsel with extensive experience in antitrust and class action litigation. They have vigorously prosecuted the class claims, and they will continue to do so through all phases of the litigation, including trial. *See Marcus v. Dep't of Revenue*, 206 F.R.D. 509, 512 (D. Kan. 2002) ("In absence of evidence to the contrary, courts will presume the proposed class counsel is adequately competent to conduct the proposed litigation"). The Court appointed Cotchett, Pitre & McCarthy, LLP, Robins Kaplan LLP, and Susman Godfrey L.L.P. as Interim Co-Lead Class Counsel in these Actions and the other automotive parts antitrust cases within Master File No. 2:12-md-2311. *See* Case Management Order No. 3 filed as ECF No. 271. For the

same reasons that the Court appointed them to this position, it should appoint them Settlement Class Counsel here.

### B.     The Proposed Settlement Classes Meet the Requirements of Rule 23(b)(3).

To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: common questions must predominate over any questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) ("*Amchem*"); *see also In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008). With respect to both requirements, the Court need not inquire whether the "case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620 (internal citations omitted).

### i.     Common Questions of Law and Fact Predominate.

"Rule 23(b)(3) does not mandate that a plaintiff seeking class certification prove that each element of the claim is susceptible to classwide proof." *In re Whirlpool Corp.*, 722 F.3d at 859. Instead, "'[a] claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individualized position.'" *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 408 (quoting *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 307 (E.D. Mich. 2001)). Common questions need only predominate; they need not be dispositive of the litigation. *Id.* (citing *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995)); *cf. In re Scrap Metal Antitrust Litig.*, 527 F.3d at 535-36 (holding issues regarding the amount of damages do not destroy predominance). "[T]he mere fact that questions peculiar to each individual member of the class action remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible."

31

*Cason-Merenda*, 296 F.R.D. at 535-36 (quoting *Powers v. Hamilton Cnty. Public Defender Comm.*, 501 F.3d 595, 619 (6th Cir. 2007)). As pertinent to the EPPs' request here to provisionally certify the proposed Settlement Classes under Rule 23(b)(3), the Supreme Court very recently instructed that "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen*, 133 S. Ct. at 1191.

Because the EPPs allege conduct that injured the members of the proposed Settlement Classes, issues common to the members of the proposed Settlement Classes—for example, the existence and scope of the alleged price-fixing conspiracy among Defendants and the market impact of Defendants' conspiracy—predominate over any individual questions, and therefore class treatment of the claims is appropriate for purposes of this settlement. *See Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging . . . violations of the antitrust laws."); *see also In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 254 (D.D.C. 2002) ("[A]s a rule, the allegation of a price-fixing conspiracy is sufficient to establish predominance of common questions[.]") (quoting NEWBERG ON CLASS ACTIONS § 18.28 at 18-98 (3d ed. 1992)). This Circuit has also held "[p]redominance is a test readily met in certain cases alleging . . . violations of the antitrust laws, because proof of the conspiracy is a common question that is thought to predominate over the other issues of the case." *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 535 (quoting *Amchem*, 521 U.S. at 625).[13]  Furthermore, here the evidence that will prove a violation

---

[13] Other courts have recognized that the existence and scope of an alleged antitrust conspiracy are matters susceptible to class-wide proof, and thus tend to support a finding that common issues predominate over individual ones as to at least the first element of an antitrust conspiracy claim. *See, e.g.*, *Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 105 (2d Cir. 2007); *Blades v. Monsanto Co.*, 400 F.3d 562, 572 (8th Cir. 2005); *In re Blood Reagents Antitrust Litig.*, 283 F.R.D. 222, 234 (E.D. Pa. 2012), *vacated* 783 F.3d 183 (3d Cir. 2015), *class certification granted* No. 09-2081, 2015 U.S. Dist. LEXIS 141909 (E.D. Pa. Oct. 19, 2015); *Reed*

as to one Settlement Class Member is common to the others and will be sufficient to prove it as to all—the anticompetitive conduct is not dependent on the separate conduct of the individual members of the proposed Settlement Class. *See Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *43.

This is true even if there are individual state law issues, as long as the common issues still outweigh the individual ones; *e.g.*, as long as a common theory can be alleged as to liability and impact that can be pursued by the class. *See, e.g.*, *In re Whirlpool Corp.*, 722 F.3d at 861 ("[I]t remains the 'black letter rule' that a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members." (internal quotation marks and citation omitted)); *Scrap Metal*, 527 F.3d at 535 (where common issues determine liability, fact that damages calculation may involve individualized issues does not defeat predominance). Issues common to the proposed Settlement Classes predominate in this case. The presence of these common issues of liability and impact predominates over any individual issues and strongly supports provisional certification of the proposed Settlement Classes.

ii.     **A Class Action is the Superior Method to Adjudicate These Claims.**

Rule 23(b)(3) also requires that a class action be superior to other available methods of fairly adjudicating the controversy. The superiority of class certification over other available methods is measured by consideration of certain factors, including: the class members' interests in controlling the prosecution of individual actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability of concentrating the litigation of various claims in the particular forum; and the likely difficulties in

---

*v. Advocate Health Care*, 268 F.R.D. 573, 581 (N.D. Ill. 2009); *In re Urethane Antitrust Litig.*, 251 F.R.D. 629, 634 (D. Kan. 2008); *Foundry Resins*, 242 F.R.D. at 408.

managing a class action. *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446 (N.D. Ohio Mar. 8, 2010).

Courts consistently hold that class actions are a superior method of resolving antitrust claims like those alleged here. *See In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 678 (D. Kan. 2004) (noting that individual litigation of antitrust claims would be "grossly inefficient, costly, and time consuming"). Here, the interests of the members of the proposed Settlement Classes in individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism. *Cardizem*, 200 F.R.D. at 325-26 (finding that class action is superior because it ensures fair and efficient adjudication). Untold numbers of members of the proposed Settlement Classes purchased or leased new Vehicles containing Relevant Parts as a component part or indirectly purchased Relevant Parts as a replacement part for a Vehicle during the settlement class period; resolving these claims in the context of a class action would conserve both judicial and private resources and would hasten the class members' recovery. *See, e.g.*, *In re Foundry Resins*, 242 F.R.D. at 411-12 ("Repeatedly litigating the same issues in individual suits would produce duplicate efforts, unnecessarily increase litigation costs, impose an unwarranted burden on this Court and other courts, and create a risk of inconsistent results").[14]

## III.   <u>Notice to the Class Members.</u>

Rule 23(c)(2)(B) requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be

---

[14]   Another criterion of Rule 23(b)(3) is manageability. The Supreme Court has made clear that manageability need not be considered where, as here, a class is being certified for settlement purposes. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial").

identified through reasonable effort." With regard to class action claims that are settled, Rule 23(e) instructs courts to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "[D]ue process does not require actual notice, but rather a good faith effort to provide actual notice." *Thacker*, 259 F.R.D. at 271-72. To comport with the requirements of due process, notice must be "reasonably calculated to reach interested parties." *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008) (citing *Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 283 (6th Cir. 2005)).

Because it would be most cost-effective and efficient to disseminate notice of this settlement together with notice of other settlements, the parties have agreed to defer dissemination of notice. As set forth in the Settlement Agreement, "End-Payor Plaintiffs, at a time to be decided in their sole discretion, shall submit to the Court a motion for authorization to disseminate notice of the settlement and final judgment contemplated by this Agreement to all Settlement Classes identified by End-Payor Plaintiffs (the 'Notice Motion')." Settlement Agreement ¶ 20. "The Notice Motion shall include a proposed form of, method for, and date of dissemination of notice." *Id.* Accordingly, with the Court's permission, proposed Settlement Class Counsel will submit a proposed motion for authorization to disseminate notice at a later date.

## CONCLUSION

For the foregoing reasons, EPPs respectfully request that the motion for preliminary approval be granted and that the Court enter the accompanying Proposed Order:

1. Preliminarily approving the Settlement Agreement;

2. Provisionally certifying the proposed Settlement Classes;

3. Staying the proceedings against MITSUBA (as defined in the Settlement Agreement) in accordance with the terms of the Settlement Agreement; and

35

4.  Appointing Interim Co-Lead Class Counsel for the EPPs as Settlement Class Counsel for this settlement.


Date:  October 2, 2017                     Respectfully submitted,


                                           */s/ Steven N. Williams*
                                           Steven N. Williams
                                           Elizabeth Tran
                                           Joyce Chang
                                           **COTCHETT, PITRE & McCARTHY, LLP**
                                           San Francisco Airport Office Center
                                           840 Malcolm Road, Suite 200
                                           Burlingame, CA 94010
                                           Telephone: (650) 697-6000
                                           Facsimile: (650) 697-0577
                                           swilliams@cpmlegal.com
                                           etran@cpmlegal.com
                                           jchang@cpmlegal.com


                                           Hollis Salzman
                                           Bernard Persky
                                           William V. Reiss
                                           **ROBINS KAPLAN LLP**
                                           399 Park Avenue, Suite 3600
                                           New York, NY 10022
                                           Telephone: (212) 980-7400
                                           Facsimile: (212) 980-7499
                                           HSalzman@RobinsKaplan.com
                                           BPersky@RobinsKaplan.com
                                           WReiss@RobinsKaplan.com


                                           Marc M. Seltzer
                                           Steven G. Sklaver
                                           **SUSMAN GODFREY L.L.P.**
                                           1901 Avenue of the Stars, Suite 950
                                           Los Angeles, CA 90067-6029
                                           Telephone: (310) 789-3100
                                           Facsimile: (310) 789-3150
                                           mseltzer@susmangodfrey.com
                                           ssklaver@susmangodfrey.com


                                           Terrell W. Oxford
                                           Chanler A. Langham
                                           Omar Ochoa

**SUSMAN GODFREY L.L.P.**
1000 Louisiana St., Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
toxford@susmangodfrey.com
clangham@susmangodfrey.com
oochoa@susmangodfrey.com

*Interim Co-Lead Class Counsel for the Proposed End-Payor Plaintiffs Classes*

E. Powell Miller (P39487)
Devon P. Allard (P71712)
**THE MILLER LAW FIRM, P.C.**
The Miller Law Firm, P.C.
950 W. University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com
dpa@millerlawpc.com

*Interim Liaison Class Counsel for the Proposed End-Payor Plaintiffs Classes*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2017 I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Steven N. Williams*
Steven N. Williams
