**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 2:12-md-02311<br>Hon. Sean F. Cox |
| IN RE: WIRE HARNESS SYSTEMS | Case No. 2:12-cv-00103 |
| IN RE: INSTRUMENT PANEL CLUSTERS | Case No. 2:12-cv-00203 |
| IN RE: FUEL SENDERS | Case No. 2:12-cv-00303 |
| IN RE: HEATER CONTROL PANELS | Case No. 2:12-cv-00403 |
| IN RE: BEARINGS | Case No. 2:12-cv-00503 |
| IN RE: OCCUPANT SAFETY SYSTEMS | Case No. 2:12-cv-00603 |
| IN RE: ALTERNATORS | Case No. 2:13-cv-00703 |
| IN RE: ANTI-VIBRATIONAL RUBBER PARTS | Case No. 2:13-cv-00803 |
| IN RE: WINDSHIELD WIPER SYSTEMS | Case No. 2:13-cv-00903 |
| IN RE: RADIATORS | Case No. 2:13-cv-01003 |
| IN RE: STARTERS | Case No. 2:13-cv-01103 |
| IN RE: AUTOMOTIVE LAMPS | Case No. 2:13-cv-01203 |
| IN RE: SWITCHES | Case No. 2:13-cv-01303 |
| IN RE: IGNITION COILS | Case No. 2:13-cv-01403 |
| IN RE: MOTOR GENERATORS | Case No. 2:13-cv-01503 |
| IN RE: STEERING ANGLE SENSORS | Case No. 2:13-cv-01603 |
| IN RE: HID BALLASTS | Case No. 2:13-cv-01703 |
| IN RE: INVERTERS | Case No. 2:13-cv-01803 |
| IN RE: ELECTRONIC POWERED STEERING ASSEMBLIES | Case No. 2:13-cv-01903 |
| IN RE: AIR FLOW METERS | Case No. 2:13-cv-02003 |
| IN RE: FAN MOTORS | Case No. 2:13-cv-02103 |
| IN RE: FUEL INJECTION SYSTEMS | Case No. 2:13-cv-02203 |
| IN RE: POWER WINDOW MOTORS | Case No. 2:13-cv-02303 |
| IN RE: AUTOMATIC TRANSMISSION FLUID WARMERS | Case No. 2:13-cv-02403 |
| IN RE: VALVE TIMING CONTROL DEVICES | Case No. 2:13-cv-02503 |
| IN RE: ELECTRONIC THROTTLE BODIES | Case No. 2:13-cv-02603 |
| IN RE: AIR CONDITIONING SYSTEMS | Case No. 2:13-cv-02703 |

| | |
|---|---|
| IN RE: WINDSHIELD WASHER SYSTEMS | Case No. 2:13-cv-02803 |
| IN RE: CONSTANT VELOCITY JOINT BOOT PRODUCTS | Case No. 2:14-cv-02903 |
| IN RE: SPARK PLUGS | Case No. 2:15-cv-03003 |
| IN RE: AUTOMOTIVE HOSES | Case No. 2:15-cv-03203 |
| IN RE: SHOCK ABSORBERS | Case No. 2:15-cv-03303 |
| IN RE: BODY SEALING PRODUCTS | Case No. 2:16-cv-03403 |
| IN RE: INTERIOR TRIM PRODUCTS | Case No. 2:16-cv-03503 |
| IN RE: AUTOMOTIVE BRAKE HOSES | Case No. 2:16-cv-03603 |
| IN RE: EXHAUST SYSTEMS | Case No. 2:16-cv-03703 |
| IN RE: CERAMIC SUBSTRATES | Case No. 2:16-cv-03803 |
| IN RE: POWER WINDOW SWITCHES | Case No. 2:16-cv-03903 |
| IN RE: AUTOMOTIVE STEEL TUBES | Case No. 2:16-cv-04003 |
| IN RE: ACCESS MECHANISMS | Case No. 2:16-cv-04103 |
| IN RE: SIDE DOOR LATCHES | Case No. 2:17-cv-04303 |
| IN RE: ELECTRONIC BRAKING SYSTEMS | Case No. 2:21-cv-04403 |
| IN RE: HYDRAULIC BRAKING SYSTEMS | Case No. 2:21-cv-04503 |
| THIS DOCUMENT RELATES TO:<br>End-Payor Actions | |

**JOINT DECLARATION IN SUPPORT OF SETTLEMENT CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES <u>IN CONNECTION WITH THE ROUNDS 1–5 SETTLEMENTS</u>**

William V. Reiss, Marc M. Seltzer, and Elizabeth T. Castillo jointly declare as follows:

1. William V. Reiss is an attorney licensed to practice law in the State of New York and a partner at the law firm of Robins Kaplan LLP. Marc M. Seltzer is an attorney licensed to practice law in the State of California and a partner at the law firm of Susman Godfrey L.L.P. Elizabeth T. Castillo is an attorney licensed to

practice law in the State of California and District of Columbia and a partner at the law firm of Cotchett, Pitre & McCarthy, LLP. They are each admitted to practice before this Court, and collectively they serve as Interim Co-Lead Class Counsel and Settlement Class Counsel[1] for the End-Payor Plaintiffs in *In re Automotive Parts Antitrust Litigation*, MDL No. 12-md-02311 ("*Auto Parts Litigation*").

2. They submit this Joint Declaration in support of Settlement Class Counsel's Motion for An Award of Attorneys' Fees in Connection with the Rounds 1–5 Settlements.

3. Each declares that he or she has personal knowledge of the matters set forth herein, and if called upon to testify thereto, could do so competently. Each makes this Joint Declaration pursuant to 28 U.S.C. § 1746.

**Settlement Class Counsel**

4. Settlement Class Counsel, who are nationally recognized leaders in the field of complex litigation, have dedicated substantial time and resources to the *Auto Parts Litigation*. Along with Class Counsel, who performed work in this litigation at the direction of Settlement Class Counsel, they litigated against defendants represented by highly skilled and experienced attorneys at many of the largest law firms in the country. They have devoted millions of dollars of their time and

[1] Defined terms not otherwise defined herein shall have the meanings ascribed to those terms as noted in the Motion.

resources to this litigation. They took on these cases entirely on a contingency basis and undertook significant risks with no assurance of payment should they have not been able to successfully prosecute these cases. They have foregone other work opportunities to dedicate their professional efforts to this litigation.

5. Settlement Class Counsel could have devoted their resources to less risky cases, where proof of damages were more certain, where expert witnesses and other case costs were less expensive, and where payment would come faster. They nonetheless dedicated their time and resources to these cases because they were committed to representing the classes to the best of their ability. It is important to note that the Courts have recognized that assessing the nature and degree of risks counsel took on is to be judged at the outset of the litigation.

6. The Settlement Administrator has disseminated a notice of this application for attorneys' fees to all eligible Settlement Class Members who provided an email address. Settlement Class Members were also previously notified that Settlement Class Counsel planned to request attorneys' fees up to 30% of the Aggregate Settlement Amount net of litigation expenses, plus a pro rata share of interest earned on the amount of any fee award granted. Their Motion, supported by this Joint Declaration, will also be posted to the Settlement Website.

**The Action**

7. End-Payor Plaintiffs in the *Auto Parts Litigation* are persons or entities who purchased or leased a qualifying new vehicle in the U.S. (not for resale) or a qualifying replacement automotive part or parts (not for resale) and who were the ultimate victims harmed by defendants' conduct at issue in this litigation, which related to illegal bid rigging and price-fixing. End-Payor Plaintiffs alleged that the defendants in the *Auto Parts Litigation*, which are some of the largest automotive parts manufacturers in the world, conspired with each other and other co-conspirators to fix the price of, rig bids for, and allocate the markets of automotive parts incorporated into new vehicles manufactured by automobile manufacturers.

8. The *Auto Parts Litigation* began in 2011, with the filing of the first of many interrelated antitrust class action cases ultimately brought against scores of foreign and domestic manufacturers of component parts included in millions of vehicles sold and leased to consumers across the United States.

9. On February 7, 2012, the United States Judicial Panel on Multidistrict Litigation ("Judicial Panel" or "Panel") transferred actions sharing "factual questions arising out of an alleged conspiracy to inflate, fix, raise, maintain, or artificially stabilize prices of automotive wire harness systems" to the Eastern District of Michigan. *See* Conditional Transfer Order, Case No. 2:12-md-02311 (E.D. Mich. 2012), ECF No. 2.

10. After complaints were filed alleging conspiracies to fix prices of additional automotive parts, including *Instrument Panel Clusters* (Case No. 2:12-cv-00200), *Heater Control Panels* (Case No. 2:12-cv-00400), and *Fuel Senders* (Case No. 2:12-cv-00300), the Judicial Panel determined that including all actions involving alleged price-fixing in the automotive parts industry in MDL No. 2311 would result in the most efficient handling of the litigation. The additional automotive parts cases were transferred to this Court for coordinated pretrial proceedings, and *In re Automotive Wire Harness Systems Antitrust Litigation* was renamed *In re: Automotive Parts Antitrust Litigation*. Ultimately, 43 antitrust price-fixing class actions against over 165 defendants (72 that End-Payor Plaintiffs settled with, excluding Takata) have been filed with the Court.

11. On March 23, 2012, the Court appointed Cotchett, Pitre & McCarthy, LLP, Robins Kaplan LLP,[2] and Susman Godfrey L.L.P. as Interim Co-Lead Class Counsel in the *Wire Harness Systems* action and made the same appointment on August 7, 2012, for all the other automotive parts antitrust cases. *See* Master File

[2] Early in the litigation, Labaton Sucharow LLP was appointed by the Court as co-lead in the litigation. Order Granting End-Payor Plaintiffs' Application for Appointment of Interim Co-Lead Class Counsel and Liaison Counsel, Case No. 2:12-md-02311-MOB-MKM (Mar. 23, 2012), ECF No. 65 (initially appointing "Labaton Sucharow LLP, Susman Godfrey LLP and Cotchett, Pitre & McCarthy LLP to serve as Interim Co-Lead Class Counsel for end-payor purchasers of wire harnesses and related products . . . in this antitrust class action"). The lawyers at the Labaton firm were continued in their role at their new firm, Robins Kaplan LLP, which replaced the Labaton firm as one of the three co-lead counsel.

No. 2:12- md-02311, ECF No. 65, Order Granting End-Payor Plaintiffs' Application for Appointment of Interim Co-Lead Class Counsel and Liaison Counsel, and ECF No. 271, Case Management Order No. 3.

12. Since our appointment as Interim Co-Lead Class Counsel for End-Payor Plaintiffs, our firms have together supervised the activities of all counsel for the end-payor classes in prosecuting the *Auto Parts Litigation*. This litigation is unique in its size and complexity. From the outset, our firms have diligently worked to advance the claims of members of the proposed end-payor classes, and have performed the following services on behalf of the proposed end-payor classes:

- Performing extensive research into the worldwide automotive parts industry, as well as the federal antitrust laws and the antitrust, consumer protection, and unjust enrichment laws of at least 30 states and the District of Columbia;

- Researching and drafting dozens of class action complaints, including over 70 amended complaints, incorporating extensive new factual information obtained as a result of additional investigation, document review, and proffers and interviews of witnesses made available by certain settling and cooperating defendant groups;

- Successfully opposing dozens of motions to dismiss filed by defendant groups through extensive briefing and oral argument before the Court;

- Reviewing and analyzing millions of pages of English and foreign language documents (many of which Class Counsel and the attorneys working with them were required to translate) produced by defendants;

- Drafting and coordinating discovery with all plaintiff groups against over one hundred defendants, as well as preparing and arguing numerous contested discovery motions;

- Meeting with defendants' counsel in connection with factual proffers obtained pursuant to the cooperation provisions of settlement agreements or the Antitrust Criminal Penalty Enhancement Reform Act, and interviewing key witnesses from various defendant groups, including abroad and in federal prison in the United States;

- Oversaw the prosecution of end-payor class actions, and coordinated those efforts wither other plaintiff groups and with the United States Department of Justice;

- Obtaining, analyzing, and producing thousands of pages of documents and data from over 50 class representatives, and responding to multiple rounds of detailed interrogatories propounded by more than 10 separate sets of defendant groups;

- Spearheading the drafting and negotiation of written discovery, discovery plans, protocols, and stipulations with different defendant and plaintiff groups;

- Exchanging information and coordinating with counsel for all of the other class plaintiffs, and State Attorneys General regarding various case and settlement issues;

- Preparing for and defending more than 50 class representative depositions;

- Preparing for and taking the depositions of more than 190 defendant witnesses in the U.S. and abroad;

- Participating in or reviewing the results of more than 140 depositions of additional class representatives and non-parties;

- Meeting and coordinating with economic and industry experts to analyze facts learned through investigation and discovery;

- Working with experts to discuss and craft appropriate liability and damages methodologies in preparation for class certification, motion practice, and computation of class-wide damages for purposes of trial;

- Spearheading a joint effort between other class counsel and defendants to obtain discovery from automobile manufacturers, including drafting, serving, and negotiating over 100 subpoenas directed to at least 17 automobile manufacturer groups, taking numerous depositions, participating in mediations, drafting and successfully arguing two motions to compel discovery and subsequently drafting both general and manufacturer-specific orders governing production, and negotiating for months to obtain both upstream and downstream automobile manufacturer discovery;

- Preparing for class certification motions by, among other things, analyzing tens of thousands of documents and other discovery, conducting numerous depositions and interviews, working closely with experts and economists, and coordinating with both plaintiff and defendant groups to obtain essential discovery from automobile manufacturers;

- Performing the numerous settlement-related tasks necessary to achieve more than 72 settlements totaling over $1.224 billion, the largest indirect purchaser recovery in U.S. history. These tasks included analyzing economic evidence and data and formulating settlement demands; engaging in extensive arm's-length negotiations with defendant groups, dozens of in-person meetings, countless other communications, and in many instances, working with the assistance of outside neutral mediators; negotiating and preparing drafts of settlement agreements; preparing preliminary approval motions and escrow agreements for each settlement; briefing and arguing responses to settlement objections before the Court and on appeal to the Sixth Circuit;

- Crafting, in consultation with a nationally recognized class notice expert, five extensive notice programs that were approved by the Court, including the most recent August 2022 settlement class notice program;

- Responding to objections to the settlements and ensuring the settlements will be available to the classes years earlier than would be the case if litigation against defendants continued through trial and appeal;

- Devising the plans of allocation for the settlements, including a methodology for calculating the value of claims under the plan of allocation;

- Collaborating with Kinsella Media, LLC as Settlement Notice Provider and Epiq, the successor to Garden City Group, LLC, as Settlement Administrator;[3]

- Addressing concerns relating to the settlement administration process raised by claims filers;

- Obtaining the Court's approval of the settlement administration process to guarantee the fair and reasonable distribution of net settlement funds across Settlement Class Members;

- Actively overseeing the settlement administration process to ensure the equitable distribution and allocation of settlements to claimants, including troubleshooting thorny claims-related issues; and

- Engaging in negotiations, motion practice, and mediation to ensure the accurate and timely processing of claims.

All of this work has been done in what is, without a doubt, one of the most complex set of antitrust cases in the history of the antitrust laws. The need to conduct discovery against numerous foreign defendants located around the world compounded the complexity of this litigation. Moreover, the vast majority of

[3] The Court previously appointed Kinsella and GCG as Notice Administrator and Settlement Administrator, respectively. *See*, *e.g.*, Order Granting End-Payor Plaintiffs' Motion for Authorization to Disseminate Combined Notice to the End-Payor Plaintiffs Settlement Classes, No. 2:13-cv-00703 (Jan. 26, 2016), ECF No. 54. Accordingly, Settlement Class Counsel do not recite their qualifications in this motion.

defendants brought at least one motion to dismiss plaintiffs' claims challenging standing and the sufficiency of plaintiffs' complaints, among other issues.

**Overall Settlements**

13. End-Payor Plaintiffs have settled all cases against all defendants in the *Auto Parts Litigation*.

14. Beginning in the fall of 2012, Settlement Class Counsel engaged in arm's-length discussions and negotiations with highly experienced defense counsel regarding the potential resolution of End-Payor Plaintiffs' claims. Over the next few years, Settlement Class Counsel had numerous discussions, including by email, conference calls, in-person meetings, and mediations. The efforts of Settlement Class Counsel resulted in settlements totaling $224,668,350 between End-Payor Plaintiffs and 11 settling defendant families ("Round 1 Settlements"), additional settlements totaling $379,401,268 between End-Payor Plaintiffs and 12 settling defendant families ("Round 2 Settlements"), additional settlements totaling $432,823,040 between End-Payor Plaintiffs and 33 settling Defendant families ("Round 3 Settlements"), additional settlements totaling $183,958,000 between End-Payor Plaintiffs Ps and 17 settling defendant families ("Round 4 Settlements"), and additional settlements totaling $3,154,000 between End-Payor Plaintiffs sand

three settling defendant families ("Round 5 Settlements"), all of which have been finally approved.[4]

15. In sum, after nearly a decade of hard-fought litigation, Settlement Class Counsel reached settlements with all 72 groups of defendants across 43 automotive parts cases totaling $1,224,004,658, which is referred to as the Aggregate Settlement Amount.[5] This truly remarkable result is believed to be the largest amount ever obtained on behalf of indirect purchasers in the history of U.S. antitrust litigation.

16. Each settlement was reached only after Settlement Class Counsel obtained information about each settling defendant's ability to pay, including the impact that continued and expensive antitrust litigation would have on each

---

[4] *See*, *e.g.*, Amended Opinion and Order Granting Final Approval of Class Action Settlements, Case No. 2:12-cv-00103 (Aug. 9, 2016), ECF No. 512 ("Round 1 Final Approval Order"); Order Granting Final Approval to the Round 2 Settlements, Case No. 2:12-cv-00403 (July 10, 2017), ECF No. 239 ("Round 2 Final Approval Order"); Order Granting Final Approval to the Round 3 Settlements, Case No. 2:12-cv-00103 (Nov. 8, 2018), ECF No. 628 ("Round 3 Final Approval Order"); Order Granting Final Approval of the Round 4 Settlements, Case No. 2:12-cv-00603 (Sept. 23, 2020), ECF No. 230 ("Round 4 Final Approval Order"); Order Granting Final Approval of the Round 5 Settlements, Case No. 2:16-cv-03703 (Feb. 6, 2023), ECF No. 211 ("Round 5 Final Approval Order").

[5] The Aggregate Settlement Amount excludes settlements obtained by Settlement Class Counsel with Takata Corp. and TK Holdings, Inc. (together, "Takata"), which were obtained in bankruptcy proceedings. Settlement Class Counsel have recovered a total of $471,056 from these settlements, which will be included in the distribution to Settlement Class Members. Settlement Class Counsel do not intend to seek fees on money obtained from those settlements.

defendant's financial position and, therefore, the size and likelihood of any recovery for the classes.

17. The Rounds 1 through 5 Settlements provide the Settlement Classes with substantial cash benefits and valuable cooperation from defendants and resolve all End-Payor Plaintiffs' claims in the *Auto Parts Litigation*. Additionally, Settlement Class Counsel negotiated for and obtained significant non-monetary benefits from defendants, including equitable relief.

18. This recovery is especially noteworthy because, despite guilty pleas by some defendants, the Department of Justice did not obtain any monetary restitution for the victims of defendants' unlawful conduct

19. Members of the Settlement Classes have been compensated (and many will be compensated further) for their injuries only through Settlement Class Counsel pursuing this litigation entirely on a contingent fee basis. The Settlement Administrator has distributed payments of $100 to each Settlement Class Member who timely filed a valid claim and, unless delayed by the filing of objections by claimants to the settlement proceeds, the Settlement Administrator is planning to distribute approximately $827 million to Authorized Claimants this fall.

**Round 5 Settlements**

20. Settlement Class Counsel last applied for attorneys' fees and reimbursement of expenses more than five years ago in connection with the Round

4 Settlements on October 31, 2019, which the Court granted. After filing that motion, Settlement Class Counsel continued to prosecute the litigation against the last defendants—all of whom settled in 2020 and 2021, as part of the Round 5 Settlements.

21. Settlement Class Counsel's work performed in connection with the Round 5 Settlements included negotiating a case schedule and various discovery stipulations with the Bosal defendants in *Exhaust Systems*; litigating claims against the Bosal defendants through motions to dismiss; obtaining cooperation from Bosal's co-defendants that had settled earlier to use in litigation against Bosal; investigating and filing complaints in the *Electronic Braking Systems* and *Hydraulic Braking Systems* cases, which were not subject to the Department of Justice's criminal investigations; negotiating settlements with defendants in these cases and obtaining cooperation from them; obtaining preliminary and final approval of these settlements; and moving for authorization to disseminate notice to the Settlement Classes in connection with the Round 5 Settlements.

22. Settlement Class Counsel have not previously sought attorneys' fees or costs in connection with the Round 5 Settlements.

## **Settlement Administration**

23. Settlement administration began with implementation of the initial notice program in 2016. Settlement Class Counsel have worked with the Settlement

Administrator to administer (and ultimately distribute) the settlement. Settlement Class Counsel's work performed in connection with settlement administration since 2019 includes:

- Setting timelines for processing claims for the Rounds 1 through 4 Settlements and, separately, claims for the Round 5 Settlements;

- Managing the claims process in light of the considerable number of large claimants, third-party claimants, and vehicles and replacement parts claimed;

- Assessing the evidence claimants have submitted to provide support for their claims;

- Establishing a deficiency review and audit process for claims;

- Establishing and implementing a sampling process for verification of claims;

- Addressing de-duplication efforts and establishing a priority for the filing of duplicate vehicles, which included classifying claims and negotiating with third-party claims filers;

- Responding to attempts by third-party claims filer Financial Recovery Services, LLC, to intervene in this litigation for the purpose of raising potential claims to share in the class settlements based on alleged subrogation rights and to file untimely claims;

- Briefing and arguing objections and appeals by Financial Recovery Services, LLC, in both this Court and in the Sixth Circuit;

- Resolving concerns addressing the proposed plan of allocation;

- Engaging in negotiations, motion practice, and mediation with large claimants and third-party claims filers over various claims administration issues;

- Negotiating with several Fleet Management Companies ("FMCs") addressing whether FMCs that purchased new vehicles and then leased those vehicles (as lessors) to FMC Customers (as lessees) are members of the Settlement Classes and entitled to recover from the class settlements; and

- Responding to numerous emails and calls from third-party claims filers and Settlement Class Members.

24. As more fully set forth in both the Motion for and Order Approving End-Payor Plaintiffs' Motion for Distribution of $100 Minimum Payments to Authorized Claimants[6] and the Pro Rata Distribution Motion and Order,[7] this settlement administration process involved dealing with claims based on millions of vehicles and thousands of replacement parts across 43 separate cases. It also required dealing with claims covering more than 3.4 million duplicate vehicles. Deduplication, the requirements for and analysis of supporting evidence, and sampling all presented thorny issues that had to be addressed and applied, consuming many hours of Settlement Class Counsel's time. Those efforts are described in the

[6] Order Overruling FRS's Objections and Approving End-Payor Plaintiffs' Motion for Distribution of $100 Minimum Payments to Authorized Claimants, Case No. 2:13-cv-02203-SFC-RSW (Oct. 21, 2024), ECF No. 424 (approving initial distribution of $100 payments).

[7] Motion for Pro Rata Distributions to Authorized Claimants by End-Payor Plaintiffs, Case No. 2:13-cv-02203-SFC-RSW (Dec. 27, 2024), ECF No. 425; Amended Order Approving Motion for Pro Rata Distributions to Authorized Claimants, Case No. 2:13-cv-02203-SFC-RSW (Mar. 18, 2025), ECF No. 426.

Declaration of Michelle M. La Count, Esq. Regarding End-Payor Plaintiffs' Motion for Pro Rata Distributions to Authorized Claimants ¶¶ 19–28, Case No. 2:13-cv-02203-SFC-RSW (Dec. 27, 2024), ECF No. 425-1 (describing sampling process for Claim Submissions).

25. Settlement Class Counsel spent hundreds if not thousands of hours of time speaking and or emailing with claimants and third-party filers purporting to represent claimants to address their concerns. As a result, Settlement Class Counsel reviewed and analyzed many of the thousands of documents submitted by claimants to substantiate their claims.

26. Settlement Class Counsel engaged in extensive motion practice with third-party claims filers. This work included multiple rounds of briefing in the district court and the Sixth Circuit in which Settlement Class Counsel secured favorable rulings barring certain entities represented by a third-party claims filer who did not submit valid and or timely claims from recovering. These efforts, and others, thwarted attempts to include non-meritorious claims years after the claims filing deadline had passed and on behalf of claimants that were not eligible to participate in the settlements. Had these claims been allowed, they would have inappropriately diluted the claims of Settlement Class Members who submitted valid claims. Inclusion of such claims would have added many months, if not years, to the

claims administration process.[8] Settlement Class Counsel has not previously sought compensation for any of these services. Settlement Class Counsel's efforts likely resulted in savings of tens of millions of dollars for the benefit of Settlement Class Members (if not more) and avoided additional significant delays in distribution of funds to Authorized Claimants.

27. In Settlement Class Counsel's decades of class action experience, this has been an exceptionally complicated settlement administration process.

28. Settlement Class Counsel anticipate that their settlement administration work will continue for the foreseeable future and may include additional distributions to the Settlement Classes and a *cy pres* distribution. It is possible that Settlement Class Counsel will be required to engage in additional negotiations and further motion practice concerning potential objections to the Settlement Administrator's claim determinations. Settlement Class Counsel anticipate expending a significant number of additional hours through the distribution of all settlement proceeds.

[8] Declaration of Brian A. Pinkerton In Support of End-Payor Plaintiffs' Opposition to Financial Recovery Strategies, LLC's Untimely Motion to Intervene, Case No. 2:12-md-02311-SFC-RSW (Nov. 11, 2020), ECF No. 2097.

**Settlement Class Counsel and Class Counsel's Fees and Lodestar**

29. Settlement Class Counsel are primarily based in San Francisco, New York, and Los Angeles, and have many years of experience in prosecuting antitrust cases. Their rates reflect their extensive experience in the field, the complexity of the matters involved in this litigation and the prevailing rate for providing such services.

30. Settlement Class Counsel and Class Counsel, who performed work at Settlement Class Counsel's direction, have vigorously prosecuted this Litigation with a keen eye to efficiency and economy of time and resources.

31. Between March 23, 2012[9] and March 31, 2025, after exercising billing judgment, Class Counsel has devoted a combined 388,956.10 hours of their time to this litigation. Class Counsel's collective lodestar is $163,297,143.68. On a weighted average blended basis, the hourly rate for that lodestar is $419.83.

32. Between October 1, 2019[10] through March 31, 2025, Settlement Class Counsel and their professional staff worked a total of 7,980.50 hours, amounting to $8,514,810.50 in time.

---

[9] Settlement Class Counsel were appointed as Interim Co-Lead Class Counsel on this date.

[10] This is the period following the last date covered in the previous interim request for fees.

33. Settlement Class Counsel last moved for attorneys' fees and reimbursement of expenses more than five years ago in connection with the Round 4 Settlements on October 31, 2019.

34. The Court's prior fee awards to Settlement Class Counsel were interim, incomplete, and amounted to 22.05% from the Rounds 1 through 4 principal total settlements to Class Counsel (or 22.29% of the Rounds 1 through 4 Settlements, net of litigation expenses).

35. By Motion, supported by this Joint Declaration, Settlement Class Counsel request fees equal to 7.77% of the Aggregate Settlement Amount (less the litigation costs approved by the Court), plus a pro rata share of the interest earned on the amount of any award granted through this application. That percentage would equal $94,076,695.98 (not including the pro rata share of the interst earned on the award amount).

36. Settlement Class Counsel's request for attorneys' fees, if granted, would when added to the prior fee awards made by the Court, equal approximately 30% of the total settlement amounts, net of litigation costs.

37. The resulting multiplier is approximately 2.22 of the lodestar. Plaintiffs note this multiplier will only decrease as Settlement Class Counsel continues to work through completion of the settlement distribution process. Much of the total lodestar is based on hourly rates dating back almost five years. The 2.22 multiplier is

substantially higher than it would be had current hourly rates been used for all expended time.

38. The Court previously granted Settlement Class Counsel a pro rata percentage share of the interest earned on the Rounds 1–4 settlements, which has been paid. Settlement Class Counsel also request a pro rata share of the interest earned on the Aggregate Settlement Amount. The interest earned on the Aggregate Settlement Amount is defined in the settlement agreements to be part of the settlement funds against which fee applications have been made. This will be the final fee request made by Settlement Class Counsel in this litigation, even though Settlement Class Counsel expects to continue to spend substantial time and effort in bringing this litigation to a conclusion. As the Court knows, the completion of the claims administration is now underway, but will not be finalized for at least several more months.

39. Settlement Class Counsel have filed this application at the present time because Judge Cox is retiring from the bench and has asked that we place before him for decision any matters that are ripe for consideration given his familiarity with the proceedings.

**Fee Awards in Other Auto Parts Cases**

40. The amount requested is consistent awards made by this Court to class counsel for other plaintiff groups in this litigation.

41. Class counsel for the automobile dealer plaintiffs were awarded approximately 30% of the aggregate $386,527,787 in settlements obtained for those classes.

42. Class counsel for the direct purchaser plaintiffs were awarded approximately 30% of the aggregate $385,250,018 in settlements they obtained.

43. Truck and Equipment Dealer Plaintiffs requested and received a somewhat lower percentage, amounting to roughly 25% of the aggregate of their much smaller settlements.

**Settlement Class Counsel's Individual Firm Litigation Costs and Expenses**

44. Since the inception of the litigation, Class Counsel have funded and advanced the substantial costs and expenses required to prosecute the litigation.

45. Settlement Class Counsel established a Litigation Fund for expenses incurred in this litigation, and Class Counsel contributed to the Litigation Fund. Settlement Class Counsel pay many of the expenses in this litigation from the Litigation Fund.

46. The Court has previously reimbursed expenses incurred by Settlement Class Counsel in conjunction with the Rounds 1–4 Settlements. The Court also awarded Settlement Class Counsel a fund for the payment of future litigation expenses in the amount of $11,250,000 on June 20, 2016. Settlement Class Counsel have used a portion of this fund for costs including (1) economic and industry expert

fees in connection with class certification motions and discovery; (2) document review hosting; (3) translation of documents; and (4) mediation.

47. As of March 31, 2025, the Litigation Fund currently had a balance of $7,230,783.

48. Between October 1, 2019 and March 31, 2025, Settlement Class Counsel's individual firms incurred costs and expenses totaling $75,947.05. Settlement Class Counsel intend to use the Litigation Fund to reimburse such costs and expenses and therefore do not seek any reimbursement of such costs and expenses. After deducting the incurred costs and expenses incurred by Settlement Class Counsel's individual firms between October 1, 2019 and March 31, 2025, the Litigation Fund will have a balance of $7,154,836.

49. If, at the conclusion of this litigation, funds remain in that funds, Settlement Counsel will add them to the settlement fund for distribution to authorized Class member claimants.

We declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 9th day of May 2025.

*<u>/s/ William V. Reiss</u>*
William V. Reiss
**ROBINS KAPLAN LLP**

*<u>/s/ Marc M. Seltzer</u>*
Marc M. Seltzer
**SUSMAN GODFREY L.L.P.**

*<u>/s/ Elizabeth T. Castillo</u>*
Elizabeth T. Castillo
**COTCHETT, PITRE & MCCARTHY, LLP**